EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| In re:

Hon. Gema González Rodríguez
Jueza Superior del Tribunal
Superior de Fajardo | 2018 TSPR 165

201 DPR _____ |

Número del Caso: AD-2015-5


Fecha:   3 de octubre de 2018


Comisión de Disciplina Judicial
Oficina de Asuntos Legales
Oficina de Administración de los Tribunales:

        Lcda. Cristina Guerra Cáceres
        Lcda. Ana Lorena Duque García
        Lcda. Carmen Pesante Martínez


Abogado de la parte querellada:

        Lcdo. Virgilio Mainardi Peralta
        Lcdo. José Rivera Rodríguez
        Lcdo. Luis M. García Tous


Materia: Disciplina Judicial: Suspensión inmediata de cuatro meses de empleo y sueldo como jueza superior por quebrantar los Cánones 18, 19, 20, 35 y 38 de Ética Profesional.

Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

*In re*:

Hon. Gema González Rodríguez,
Juez Superior del Tribunal
de Primera Instancia, Sala          AD-2015-5          Disciplina
Superior de Fajardo                                    Judicial

*PER CURIAM*

En San Juan, Puerto Rico, a 3 de octubre de 2018.

Debemos examinar, desde una perspectiva ética, la conducta de una juez ante algunos de sus representados durante el proceso de transición de la práctica privada a la judicatura, además de su comportamiento frente a estos ex clientes luego de ser confirmada a su puesto. Según establecido en la normativa aplicable, evaluaremos las faltas éticas imputadas en este caso a la luz de los preceptos consignados, tanto en el Código de Ética Profesional, 4 LPRA Ap. IX (2012), como en el Canon 1 del Código de Ética Judicial, 4 LPRA Ap. IV-B (2012) (**Canon 1**).

## I. TRASFONDO PROCESAL

El procedimiento disciplinario en contra de la juez Gema González Rodríguez[1] se inició con las quejas interpuestas por la Sra. Migdalia Gómez Correa (señora Gómez Correa), la Sra. María E. Colón Rivera (señora Colón Rivera), el Sr. Miguel Burgos Villafañe (señor Burgos Villafañe) y la Sra. María del Pilar Rodríguez Carrión (señora Rodríguez Carrión) (en conjunto, promoventes), todos ellos clientes de la juez González Rodríguez mientras ésta ejercía como abogada en la práctica privada. Es decir, previo a juramentar como Juez Superior. Los reclamos de los promoventes son similares entre sí y surgieron como resultado del manejo de sus casos en el proceso utilizado por la juez González Rodríguez para cerrar su oficina profesional en diciembre de 2012, por motivo de su nombramiento judicial. Luego de los trámites de rigor, se presentó una Querella en contra de la juez González Rodríguez donde se le imputó violación a los Cánones 18, 19, 20, 27, 35 y 38 de Ética Profesional, 4 LPRA Ap. IX (2012), así como el Canon 1.

Específicamente, se le atribuyó no informarle a los promoventes de su nombramiento y que, por lo tanto, se vería impedida de continuar representándoles una vez ocupara su puesto en la judicatura. Igualmente, se le imputó no completar las gestiones legales para las cuales

---

[1]   En adelante nos referiremos a la querellada como **"juez González Rodríguez"** o como **"licenciada González Rodríguez"**, dependiendo del momento en que ocurrieron los hechos aludidos.

fue contratada por los promoventes. Tampoco les comunicó la situación procesal de sus casos a ese momento. Asimismo, no rindió cuentas de los gastos y honorarios incurridos hasta entonces. Tampoco reembolsó aquellas sumas pagadas en exceso por trabajo no realizado, y no devolvió los expedientes a sus ex clientes. Se le atribuyó, además, la cesión de los asuntos de los promoventes a otra abogada, así como la custodia de los expedientes correspondientes, sin obtener autorización previa de los que eran sus representados. Por último, como parte de la Querella, se incluyeron violaciones al Canon 1 por la desidia e indiferencia mostrada hacia los reclamos de los promoventes en torno a la devolución de los honorarios por los trámites no realizados.

Oportunamente se celebró una vista evidenciaria ante la Comisión de Disciplina Judicial (**Comisión**). Previo al desfile de prueba, los representantes legales de la Oficina de Administración de los Tribunales (**OAT**), así como los de la juez González Rodríguez, estipularon: (1) una extensa lista de hechos relevantes a las controversias asociadas al proceso disciplinario; (2) el testimonio de tres testigos de reputación a favor de la juez González Rodríguez quienes dieron fe de su honestidad, integridad y rectitud moral, así como de la imagen y reputación intachables de las que ésta goza en la comunidad; (3) prueba documental concerniente al Contrato de Arrendamiento suscrito entre la juez González Rodríguez y la Lcda. Cristal Soto Mujica

(**licenciada Soto Mujica**) el 21 de diciembre de 2012, y (4) prueba acreditativa del pago de honorarios de abogado a la licenciada González Rodríguez por parte de los promoventes.

Durante la vista antes indicada declararon los cuatro promoventes y la licenciada Soto Mujica. Al finalizar el interrogatorio, las partes estipularon el testimonio de las Juezas Nereida Cortés González, Lourdes Díaz Velázquez y Ladi Buono de Jesús a los efectos de que la juez González Rodríguez goza de una excelente reputación en la comunidad judicial.

Una vez concluida la vista, el caso quedó sometido ante la Comisión y las partes presentaron sus memorandos de derecho en apoyo a sus respectivas posiciones. La Comisión rindió entonces su Informe y posteriormente denegó la solicitud de reconsideración de la juez González Rodríguez.

A base de las estipulaciones de hechos, el testimonio estipulado y presencial, así como de la prueba documental acordada entre las partes, la Comisión sometió sus Determinaciones de Hechos para nuestra atención. El Informe es meticuloso y recoge con gran detalle los incidentes relevantes a las quejas presentadas por cada uno de los promoventes. Consideramos, por consiguiente, que las Determinaciones de Hechos merecen nuestra deferencia y adoptamos, aunque no necesariamente de manera literal y con ciertas modificaciones, aquellas que entendemos pertinentes para disponer de los señalamientos que pesan en contra de la juez González Rodríguez. Dada la seriedad y

multiplicidad de imputaciones éticas, estimamos que los hechos en este caso, aunque extensos, son esenciales para cumplir de manera juiciosa con nuestra tarea disciplinaria.

Oportunamente, la juez González Rodríguez y la OAT nos sometieron sus escritos en torno al Informe de manera que estamos en posición de resolver.

## II. DETERMINACIONES DE HECHOS

La licenciada González Rodríguez ejerce la profesión legal desde el año 2001. A partir de ese mismo año, y hasta el año 2012, laboró en el Bufete Del Valle Rodríguez y Asociados (**Bufete**), ubicado en el Municipio de Canóvanas. Entre los años 2008 al 2012 fungió como única dueña, propietaria, "sole practitioner" y abogada del Bufete. Durante ese periodo la licenciada González Rodríguez era quien mantenía el control de los casos, los asuntos administrativos y las gestiones pendientes en el despacho legal. Para ese mismo periodo, la Sra. Katherine Trenche (**señora Trenche**) se desempeñaba como secretaria de la licenciada González Rodríguez y, conforme resultara necesario, se le impartían instrucciones para que le comunicase a los clientes asuntos específicos y no privilegiados. Además, la asistía en tareas delegadas.

El 28 de noviembre de 2012, la licenciada González Rodríguez fue nominada como Juez Superior y confirmada al cargo el 10 de diciembre de 2012. El 11 de enero de 2013 la licenciada González Rodríguez juramentó como Juez Superior.

En diciembre de 2012, tras ser nominada para el cargo de Juez Superior, la licenciada González Rodríguez condujo negociaciones con la licenciada Soto Mujica con miras a que, por una suma determinada de dinero, ésta adquiriese la cartera de clientes con asuntos activos en el Bufete a esa fecha y arrendara el edificio donde estaba ubicado el mismo. A ese momento, la licenciada Soto Mujica sólo conocía a la licenciada González Rodríguez de vista. No fue hasta el periodo entre noviembre y diciembre de 2012, cuando comenzaron a dialogar sobre la posibilidad de alquilar la oficina, que la licenciada Soto Mujica tuvo contacto más directo con la licenciada González Rodríguez.

La licenciada González Rodríguez solicitó a la señora Trenche que la asistiera en contactar a los clientes para notificarles sobre su inminente cesación de la práctica privada, así como de las negociaciones con la licenciada Soto Mujica. Durante este proceso la licenciada González Rodríguez no envió comunicaciones escritas a los clientes. La licenciada González Rodríguez reconoce que no procedió de forma uniforme en las gestiones de contacto con los clientes con asuntos activos ni en la consignación de tales gestiones mediante anotaciones en los expedientes legales.

Previo a firmar el contrato de arrendamiento, la licenciada González Rodríguez citó a la licenciada Soto Mujica a su oficina con el propósito de ambas reunirse con algunos de sus clientes e informarles que ya no continuaría a cargo de su representación legal, pero les recomendaría

los servicios de la licenciada Soto Mujica. La licenciada González Rodríguez estuvo a cargo de coordinar esta reunión y contactar a los clientes. La licenciada Soto Mujica no intervino en este trámite. El día de la reunión se iban atendiendo los clientes individualmente para discutir sus asuntos. La licenciada González Rodríguez, con expediente en mano, les explicaba los pormenores de cada caso, el estatus del mismo y las gestiones que quedaban pendientes. Finalmente, les informaba que había sido nombrada juez y no podía continuar con su representación legal, pero les recomendaba a la licenciada Soto Mujica para que asumiera su representación a los fines de completar los trabajos restantes. En ese momento, los clientes indicaban si estaban de acuerdo o no en aceptar a la licenciada Soto Mujica como su abogada. De éstos acceder, pagarían el balance pendiente por concepto de honorarios a la licenciada Soto Mujica. La licenciada Soto Mujica testificó que ese día fueron entrevistados aproximadamente entre doce (12) a quince (15) clientes y que todos adeudaban alguna suma por concepto de honorarios, cantidad que se mencionaba durante cada entrevista.

El 21 de diciembre de 2012 la licenciada González Rodríguez y la licenciada Soto Mujica suscribieron un Contrato de Arrendamiento. Como parte del acuerdo pactaron que la licenciada Soto Mujica pagaría un canon de arrendamiento de dos mil quinientos dólares ($2,500.00) mensuales por el local. Acordaron además que, al firmar el

contrato, la licenciada Soto Mujica pagaría a la licenciada González Rodríguez veinticuatro mil dólares ($24,000.00) por **"la cartera de expedientes y clientes del Bufete"**.

Durante las negociaciones previas y al otorgarse el Contrato de Arrendamiento, ni la licenciada Soto Mujica ni la licenciada González Rodríguez realizaron un inventario escrito de los casos activos que compondrían "la cartera de clientes y expedientes del bufete". La licenciada González Rodríguez definió el término "cartera de clientes y expedientes del bufete" como la totalidad de las causas con asuntos pendientes en el Bufete. Por su parte, según declaró la licenciada Soto Mujica en la vista ante la Comisión, el pago acordado de veinticuatro mil dólares ($24,000.00) correspondía, a su entender, a los casos de los clientes con los que ella se había reunido previamente junto a la licenciada González Rodríguez y que aún tenían balance de pago pendiente por honorarios.

El Contrato de Arrendamiento estaría vigente desde el 7 de enero de 2013 hasta el 7 de enero de 2014. Para fines del contrato, se consideró la totalidad de clientes, casos, gestiones y asuntos que, a esa fecha, estuviesen pendientes de disposición final. Sin embargo, en el documento no se identificaron clientes ni se hizo mención del número de representados con asuntos aún pendientes de tramitar. Así pues, no se aludió a los promoventes, las cantidades pagadas en calidad de honorarios de abogados, o los trámites legales pendientes en sus respectivos asuntos. De

otra parte, conforme estipulado por las partes, a pesar de que la licenciada González Rodríguez no podía precisar con exactitud la cantidad de clientes del Bufete con asuntos activos a la fecha de la firma del contrato, según su mejor recuerdo, los estimó en aproximadamente cincuenta (50).

El día en que se firmó el Contrato de Arrendamiento, la licenciada González Rodríguez le informó a la licenciada Soto Mujica que en el área que ella ocupaba en el Bufete quedaban expedientes inactivos y que le había dado instrucciones a la señora Trenche de contactar a los clientes para que pasaran a recogerlos. Asimismo, le preguntó si tenía objeción con que estos expedientes permanecieran allí. La licenciada Soto Mujica respondió no tener inconveniente puesto que no pensaba utilizar ese espacio de la oficina. Más bien se encontraba habilitando otra área para dedicarla a su práctica legal. Además, lo vislumbró como una oportunidad para ofrecer sus servicios a los clientes de la licenciada González Rodríguez cuando éstos pasaran a recoger sus expedientes.

Según declaró la licenciada Soto Mujica, el día en que se firmó el contrato, la licenciada González Rodríguez le indicó que los expedientes de los clientes para los cuales asumiría representación legal serían los que se encontraban en el archivo grande de tres gavetas ubicado detrás de la secretaria en el área de la entrada de la oficina. Éstos constaban de alrededor de quince expedientes. Entre los casos que pasarían a ser

responsabilidad de la licenciada Soto Mujica había asuntos que aún no se habían presentado en el tribunal tales como, expedientes de dominio y declaratorias de herederos, debido a que quedaba pendiente algún trámite o porque el cliente no había entregado todos los documentos necesarios.

Para efectos de la licenciada Soto Mujica sus clientes iban a ser aquellas personas con los que ella y la licenciada González Rodríguez se habían reunido previo a firmar el contrato el 21 de diciembre de 2012 y únicamente retuvo sus expedientes. A diciembre de 2012 la licenciada Soto Mujica no conocía a ninguno de los promoventes.

Las partes estipularon que el 7 de enero de 2013 la licenciada González Rodríguez entregó la custodia y control de algunos expedientes legales a la licenciada Soto Mujica. Ese mismo día la licenciada Soto Mujica tomó posesión de la oficina y de todo su contenido. Aunque quedaron algunos expedientes restantes en el despacho legal, la licenciada Soto Mujica nunca los tocó por no ser suyos. La señora Trenche continuó como su secretaria una vez ésta se hizo cargo de la oficina.

Durante su testimonio en la vista evidenciaria, la licenciada Soto Mujica expresó estar de acuerdo en que el contrato suscrito con la licenciada González Rodríguez se prestaba a malas interpretaciones. Especificó que fue la licenciada González Rodríguez quien se hizo cargo de la redacción del documento.

**A. Sobre la Queja de la Sra. Migdalia Gómez Correa**

La señora Gómez Correa es enfermera práctica y reside hace más de veinte (20) años en Jacksonville, Florida. Tanto la señora Gómez Correa como su hermano, el Sr. José Gómez Correa (señor Gómez Correa), interesaban formalizar las gestiones correspondientes para que el terreno que sus abuelos le habían regalado a su madre y la residencia en la que esta última residió por más de treinta (30) años, constaran a nombre de su progenitora mediante escritura pública. Para ello, a finales de abril del 2012 acudieron a la oficina de la licenciada González Rodríguez. Luego de una orientación, contrataron verbalmente los servicios de la licenciada González Rodríguez para tramitar un expediente de dominio a favor de su madre y pactaron honorarios legales de seis mil dólares ($6,000.00). La señora Gómez Correa testificó que la licenciada González Rodríguez le indicó que comenzaría a trabajar en el caso tan pronto le abonaran el cincuenta por ciento (50%) de los honorarios acordados.

Entre los documentos que se le entregaron a la licenciada González Rodríguez se encontraban la escritura mediante la cual los abuelos de la señora Gómez Correa habían adquirido la propiedad, así como un plano de división de solares. Al momento de contratar los servicios de la licenciada González Rodríguez, acordaron que toda comunicación sobre el caso se efectuaría a través de la señora Gómez Correa debido a la avanzada edad de su mamá.

Después de esa primera reunión, el 7 de mayo de 2012 la señora Gómez Correa regresó al despacho para entregar un pago parcial de honorarios de tres mil dólares ($3,000.00). En esa ocasión la atendió la señora Trenche. No hubo otras reuniones entre la licenciada González Rodríguez y los miembros de la familia Gómez Correa.

Entre mayo de 2012 a diciembre de 2012, la señora Gómez Correa no recibió ninguna llamada telefónica de parte de la licenciada González Rodríguez, ni del personal de su oficina. Tampoco medió reunión alguna con la licenciada González Rodríguez. Por su parte, la señora Gómez Correa sí se comunicó con la oficina de la licenciada González Rodríguez por lo menos en dos (2) o tres (3) ocasiones en las que habló con su secretaria, la señora Trenche, quien siempre le indicaba que se estaba trabajando en su caso.

En diciembre de 2012 la licenciada González Rodríguez no remitió comunicación escrita a ninguno de los miembros de la familia Gómez Correa para notificarle que había sido nombrada juez, se encontraba en negociaciones con la licenciada Soto Mujica o para devolverle el expediente o los honorarios no devengados. Tampoco la señora Gómez Correa tuvo comunicación o se reunió con la licenciada Soto Mujica durante diciembre de 2012. Para la fecha de su nombramiento judicial, la licenciada González Rodríguez no había culminado los trámites legales contratados con los miembros de la familia Gómez Correa, por carecer de la documentación complementaria necesaria.

En el 2013, la señora Gómez Correa se comunicó con la oficina de la licenciada González Rodríguez y la atendió una secretaria nueva. La señora Gómez Correa se sorprendió y le explicó la razón de su llamada. En ese momento la secretaria le informó que la licenciada González Rodríguez ya no estaba y que la licenciada Soto Mujica era la nueva abogada a cargo de la oficina. La señora Gómez Correa solicitó entonces hablar o reunirse con la licenciada Soto Mujica para preguntarle qué había sucedido con su caso.

Para mediados de 2013, la licenciada Soto Mujica y los miembros de la familia Gómez Correa se reunieron en varias ocasiones para dialogar sobre su contrato con la licenciada González Rodríguez. La licenciada Soto Mujica les informó que ella era la nueva abogada en la oficina y desconocía los detalles de su caso y del arreglo profesional con la licenciada González Rodríguez.

Al examinar el expediente, la licenciada Soto Mujica observó que no surgía que se hubiese llevado a cabo ningún trámite en el caso y que solamente se encontraban un estudio de título y la hoja con los datos de la señora Gómez Correa. La licenciada Soto Mujica se ofreció entonces a efectuar los trámites previamente contratados con la licenciada González Rodríguez a cambio de tres mil dólares ($3,000.00), más costas y gastos en consideración de que esa era la cantidad restante del acuerdo previo de honorarios. Además, la licenciada Soto Mujica requirió un adelanto de seiscientos dólares ($600.00) para comenzar a

trabajar en el caso. Los miembros de la familia Gómez Correa declinaron la propuesta indicando que la licenciada González Rodríguez les había expresado que serían solamente seis mil dólares ($6,000.00) en total. No obstante, decidieron dejar el expediente en la oficina de la licenciada Soto Mujica pues iban a intentar comunicarse con la juez González Rodríguez.

Expirado el año de vigencia del Contrato de Arrendamiento, la licenciada Soto Mujica mudó su despacho a un lugar cercano llevándose consigo algunos de los expedientes. El resto quedó en la antigua oficina de la licenciada González Rodríguez. Antes de marcharse, la licenciada Soto Mujica hizo gestiones para comunicarse con los clientes que no tenían asuntos pendientes para que pasaran a recoger sus expedientes.

De otra parte, aunque la licenciada Soto Mujica decidió llevarse únicamente aquellos expedientes de los clientes con los que había establecido una relación contractual, optó por incluir el expediente de la señora Gómez Correa puesto que no logró comunicarse para que pasaran a recogerlo. Además, durante el curso de la conversación le habían manifestado interés en que se tramitara el expediente de dominio, condicionado a que pudiesen recuperar el dinero que habían pagado a la licenciada González Rodríguez.

En mayo de 2014, la señora Gómez Correa envió una carta a la entonces juez González Rodríguez para inquirirle

sobre su caso y solicitar la devolución de los tres mil dólares ($3,000.00) para poder tramitar el expediente de dominio. Envió la carta por correo certificado a la dirección postal conocida en Canóvanas, Puerto Rico. Esta comunicación le fue devuelta a la señora Gómez Correa después de un mes y medio. Tras recibirla, la señora Gómez Correa se comunicó nuevamente con la oficina legal que ocupaba la licenciada González Rodríguez previo a su nombramiento judicial. En esa ocasión le contestó la señora Trenche, quien le explicó la razón por la cual su carta no había sido reclamada en el correo, sugiriéndole que la enviara nuevamente, esta vez por correo ordinario. Así lo hizo y esa vez la carta no fue devuelta. Sin embargo, la señora Gómez Correa no recibió respuesta a su misiva.

Luego de conocer la nueva ubicación de la oficina de la licenciada Soto Mujica los miembros de la familia Gómez Correa se reunieron nuevamente con ésta. En esa ocasión le informaron las gestiones realizadas para contactar a la juez González Rodríguez mediante carta y llamadas telefónicas al tribunal, sin haber logrado comunicación con ella. Asimismo, le hicieron saber su decisión de llevarse el expediente del caso.

Días después, la licenciada Soto Mujica recibió una llamada del Lcdo. Marcelino Ruiz Corujo (**licenciado Ruiz Corujo**), de parte de los miembros de la familia Gómez Correa. Como resultado de dicha comunicación, la

licenciada Soto Mujica le envió un correo electrónico al licenciado Ruiz Corujo explicándole el contrato entre ella y la juez González Rodríguez. También le indicó que no consideraba a éstos como sus clientes.

Finalmente, no se llegó a un acuerdo entre la señora Gómez Correa y la licenciada Soto Mujica para que continuara con los trámites legales que le habían sido encomendados a la licenciada y hoy juez González Rodríguez.

El expediente de este asunto estuvo en la oficina de la licenciada Soto Mujica hasta el 17 de julio de 2014, cuando se le entregó al hermano de la señora Gómez Correa. La señora Gómez Correa tuvo entonces la oportunidad de examinarlo y pudo observar que no se había hecho nada en su caso. Sólo contenía la hoja de información. Observó, además, que ni las escrituras ni el plano de división del terreno que ella había entregado estaban en el expediente.

El 17 de septiembre de 2014, el licenciado Ruiz Corujo le remitió una comunicación escrita a la juez González Rodríguez solicitándole la devolución de los honorarios no devengados. Posteriormente, el licenciado Ruiz Corujo y la juez González Rodríguez se comunicaron telefónicamente. Estas gestiones no produjeron ningún resultado por lo que la señora Gómez Correa decidió comunicarse directamente con la juez González Rodríguez en el Tribunal de Ponce, donde entendía que estaba asignada. En esa ocasión logró hablar con la secretaria de la juez González Rodríguez mientras estuvo asignada a dicho

tribunal, quien le facilitó el número telefónico del Tribunal de Fajardo, donde podía localizarla. La señora Gómez Correa intentó comunicarse al Tribunal de Fajardo para preguntarle a la juez González Rodríguez si había recibido su correspondencia donde le solicitaba la devolución del dinero pagado, pero no obtuvo respuesta.

Al momento de la vista evidenciaria del presente proceso disciplinario los servicios legales contratados con la juez González Rodríguez no se habían realizado porque la señora Gomez Correa no contaba con los recursos económicos para pagarle a otro abogado. Según declaró la señora Gómez Correa, no tiene queja alguna en cuanto al trato que le brindó en un principio la licenciada González Rodríguez, sin embargo, tras haber sido nombrada juez, no se comunicó con ellos "nos dejó como en la nada, no pudimos hacer nada". Transcripción de Vista Evidenciaria, pág. 52.

**B. Sobre la Queja de la Sra. María E. Colón Rivera**

La señora Colón Rivera es una maestra retirada y reside en el pueblo de Canóvanas. La señora Colón Rivera acudió a la oficina de la licenciada González Rodríguez porque interesaba segregar en dos solares una finca que le habían regalado. En la primera visita, la señora Colón Rivera le explicó la situación a la secretaria y luego discutió el asunto con la licenciada González Rodríguez.

En el 2012, la señora Colón Rivera contrató verbalmente a la licenciada González Rodríguez para efectuar los servicios legales relacionados al otorgamiento

de las dos escrituras de segregación a cambio de dos mil cuatrocientos ocho dólares ($2,408.00), los cuales la señora Colón Rivera pagó. Inicialmente, la señora Colón Rivera entregó quinientos dólares ($500.00) y posteriormente fue haciendo abonos mensuales y realizando gestiones relacionadas con su caso. Le entregaba los pagos a la señora Trenche, quien le preparaba los recibos correspondientes. El último pago, y con el que saldó la totalidad de los honorarios pactados, fue efectuado el 30 de octubre de 2012.

Entre el periodo comprendido desde este último pago y diciembre de 2012, la señora Colón Rivera no recibió comunicación alguna de parte de la licenciada González Rodríguez. Tampoco se reunió con ésta durante diciembre de 2012.

Al 21 de diciembre de 2012, los servicios legales de la señora Colón Rivera, los cuales habían sido previamente pagados, se encontraban pendientes de realizarse por carecer la licenciada González Rodríguez de la documentación necesaria. Por otro lado, la licenciada González Rodríguez no le remitió ninguna comunicación escrita a la señora Colón Rivera para notificarle sobre su nombramiento judicial y que estaba en negociaciones con la licenciada Soto Mujica. Tampoco se consignó en el Contrato de Arrendamiento la cantidad de honorarios pagados. A diciembre de 2012, la licenciada González Rodríguez no le ofreció a la señora Colón Rivera devolverle los honorarios

no devengados o el expediente legal. Tampoco le informó que hiciera falta algún documento para efectuar los trámites legales acordados.

Para septiembre de 2013, la señora Colón Rivera acudió al local donde previamente había estado ubicada la oficina de la licenciada González Rodríguez con el propósito de informarle sobre las dificultades que estaba confrontando en conseguir información necesaria para tramitar su caso. Al personarse, la señora Trenche le indicó que la licenciada González Rodríguez había sido nombrada juez y se encontraba en el Tribunal de Fajardo. En ese momento la señora Colón Rivera le cuestionó qué iba a suceder con los trabajos acordados y pagados en su totalidad. La señora Trenche le informó que la juez González Rodríguez había pactado con la licenciada Soto Mujica para que ésta se hiciera cargo de continuar con sus casos. La señora Colón Rivera expresó que eso era imposible pues no conocía a la licenciada Soto Mujica, había pagado el trabajo y le correspondía a ella decidir sobre la contratación de otra abogada. Finalmente, la señora Trenche le proveyó un número de teléfono para que se comunicase con la juez González Rodríguez y le explicó cómo llegar a la oficina de la licenciada Soto Mujica.

La señora Colón Rivera declaró ante la Comisión que pudo comunicarse con la juez González Rodríguez y ésta le indicó que la licenciada Soto Mujica continuaría con su

caso.  La señora Colón Rivera cuestionó esta aseveración puesto que no conocía a la licenciada Soto Mujica.

La señora Colón Rivera visitó entonces la oficina de la licenciada Soto Mujica.  Sin embargo, la licenciada Soto Mujica le informó que no podía realizar gestión alguna en aquellos casos en que se habían saldado los honorarios de la licenciada González Rodríguez.  Por lo que, de interesar sus servicios, tendría que pagar sus honorarios.  Debido a que se le requirió costear nuevamente los trabajos pendientes, la señora Colón Rivera no llegó a un acuerdo con la licenciada Soto Mujica.

Luego de la reunión con la licenciada Soto Mujica, la señora Colón Rivera intentó comunicarse en varias ocasiones con la juez González Rodríguez a través de llamadas telefónicas, mensajes de texto y correos electrónicos.  Su interés era conocer qué sucedería con su caso y que se le devolviese el dinero de no realizarse los trabajos acordados.  Entre sus gestiones, la señora Colón Rivera redactó una carta y se personó al Centro Judicial de Fajardo para entregarla a la juez González Rodríguez.  La hizo llegar a través de un alguacil.  Asimismo, le entregó una copia de la carta al alguacil para firmarse como evidencia de recibo. Se le devolvió firmada.  La señora Colón Rivera testificó que, a pesar de todos sus intentos, nunca recibió respuesta de la juez González Rodríguez.

En el año 2014 la secretaria de la licenciada Soto Mujica le entregó el expediente a la señora Colón Rivera.

Al examinarlo, ésta observó que sólo contenía un papel con la información sobre los honorarios a ser pagados. De acuerdo con su testimonio, a la fecha de la vista evidenciaria ante la Comisión los trámites legales contratados con la juez González Rodríguez estaban todavía pendientes porque no contaba con recursos económicos para pagarle a otro abogado, además de otras dificultades que se le habían presentado.

### C. Sobre la Queja del Sr. Miguel Ángel Burgos Villafañe

El señor Burgos Villafañe se desempeña como ministro ordenado y reside en Lehigh Acres, Florida desde hace alrededor de seis (6) años. En el año 2011 el señor Burgos Villafañe contrató verbalmente los servicios legales de la licenciada González Rodríguez a los fines de examinar la posibilidad de impugnar un testamento. El señor Burgos Villafañe le indicó a la licenciada González Rodríguez que existía otro testamento otorgado ante el Lcdo. Juan Del Valle, ya para entonces fallecido.

Ese mismo día el señor Burgos Villafañe contrató los servicios de la licenciada González Rodríguez y le dio un adelanto de dos mil dólares ($2,000.00) por concepto de honorarios de abogado. De igual forma, en esa fecha le entregó todos los documentos que la licenciada González Rodríguez le requirió, tales como certificados de nacimiento, certificados de defunción, testamento, entre otros.

Después de contratar los servicios de la licenciada González Rodríguez, el señor Burgos Villafañe regresó al estado de Florida y desde allá llamaba constantemente para conocer el estatus de su caso. Cuando se comunicaba, la señora Trenche lo atendía y en todo momento le indicaba que se estaba trabajando en el caso. El 7 de marzo de 2011, la licenciada González Rodríguez gestionó una Certificación Negativa o Acreditativa de Testamento. Dicha certificación se expidió el 18 de marzo de 2011. El 31 de marzo de 2011, la licenciada González Rodríguez le cursó una comunicación a la notaria autorizante del testamento que se pretendía impugnar solicitándole una reunión.

Durante diciembre de 2012 la licenciada González Rodríguez no le remitió comunicación escrita alguna al señor Burgos Villafañe para notificarle sobre su nombramiento judicial. Tampoco le informó que estaba en negociaciones con la licenciada Soto Mujica. Además, ni la licenciada Soto Mujica ni la licenciada González Rodríguez consignaron en el Contrato de Arrendamiento los honorarios pagados. El señor Burgos Villafañe declaró que en ningún momento la licenciada González Rodríguez solicitó su consentimiento para referirle su caso a la licenciada Soto Mujica. Ello a pesar de que la letrada tenía la información necesaria para contactarlo. Según estipulado, a diciembre de 2012, la licenciada González Rodríguez no ofreció devolverle los honorarios no devengados ni el expediente legal.

Fue para el año 2013, tras comunicarse con su anterior oficina legal, que el señor Burgos Villafañe tuvo conocimiento de que la licenciada González Rodríguez había sido nombrada juez. Según atestó, la señora Trenche le indicó que no se preocupara porque en adelante su caso iba a ser atendido por la licenciada Soto Mujica. Posteriormente, el señor Burgos Vilafañe se comunicó con la oficina de la licenciada Soto Mujica. Lo atendió otra secretaria quien le informó que para que la licenciada Soto Mujica pudiera atender su caso tenía que regresar a Puerto Rico, contratarla y pagar sus honorarios.

Tiempo después el señor Burgos Villafañe pudo dialogar por teléfono con la licenciada Soto Mujica. Ésta le indicó que no atendía ese tipo de casos, ya no ocupaba la antigua oficina de la juez González Rodríguez y desconocía dónde se encontraba el expediente de su caso. La entonces secretaria de la licenciada Soto Mujica se comunicó con la señora Trenche, quien al momento se desempeñaba como secretaria del abogado que ocupaba la antigua oficina de la juez González Rodríguez, para que verificara si el expediente del señor Burgos Villafañe se encontraba allí. Días después, la señora Trenche logró localizar el expediente y se lo entregó a la secretaria de la licenciada Soto Mujica. Finalmente, en el año 2015 la oficina de la licenciada Soto Mujica le entregó el expediente del señor Burgos Villafañe a un familiar suyo. Al examinar el expediente, el señor Burgos Villafañe pudo

percatarse de que sólo contenía los documentos que él le había facilitado a la licenciada González Rodríguez y alrededor de dos o tres hojas adicionales. El señor Burgos Villafañe no había tenido la oportunidad de examinar el contenido del expediente previo a recibirlo.

El señor Burgos Villafañe intentó entonces comunicarse con la juez González Rodríguez. Inicialmente llamó al Tribunal de Ponce y allí dejó un mensaje en inglés en la extensión de la juez González Rodríguez. Proveyó su nombre, así como la información necesaria para que se le devolviese la llamada. El señor Burgos Villafañe indicó que al poco tiempo recibió una llamada del mismo número al que había intentado contactar a la juez González Rodríguez y le engancharon, por lo que llamó nuevamente pero no contestaron. Luego, el señor Burgos Villafañe intentó contactarla al Tribunal de Fajardo donde habló con su secretaria. Le solicitó que por favor la juez González Rodríguez se comunicara con él y le notificó su número de teléfono en Florida y en Puerto Rico. Además, el señor Burgos Villafañe le envió una carta a la juez González Rodríguez al Tribunal de Fajardo solicitando una reunión. Nuevamente proveyó su información de contacto. A pesar de todas sus gestiones, la juez González Rodríguez nunca se comunicó con él. Finalmente, el señor Burgos Villafañe tuvo que hacer arreglos para contratar nueva representación legal.

### D. Sobre la Queja de la Sra. María del Pilar Rodríguez Carrión

La señora Rodríguez Carrión se desempeña como Asistente de Servicios al Estudiante en el Programa de Educación Especial y reside en el Municipio de Loíza. Contrató verbalmente los servicios de la licenciada González Rodríguez para que se realizaran las siguientes gestiones: tramitación judicial de cuatro declaratorias de herederos; tramitación de cuatro planillas de caudal relicto correspondiente a cada causante; presentación de tales declaratorias de herederos y relevos de Hacienda ante el Registro de la Propiedad; otorgamiento de una instancia para inscripción del derecho hereditario por sucesión testada; tramitación de la correspondiente planilla de caudal relicto correspondiente al testador causante; presentación de una instancia y Relevo de Hacienda ante el Registro de la Propiedad; otorgamiento de escritura para inscripción de dominio y proceso judicial de desahucio. Los honorarios de abogado pactados entre la señora Rodríguez Carrión y la licenciada González Rodríguez ascendieron a ocho mil dólares ($8,000.00), los cuales fueron pagados en su totalidad.

La señora Rodríguez Carrión interesaba, además, que se preparara una escritura de su propiedad. Conforme a lo anterior, la licenciada González Rodríguez la orientó sobre las gestiones que era preciso realizar ya que la propiedad estaba ubicada en una finca que no estaba segregada y consintió en hacerse cargo de la escritura. Más adelante,

surgió otro asunto relacionado con otras declaratorias de herederos. La licenciada González Rodríguez también accedió a hacerse cargo de los trámites legales correspondientes.

La señora Rodríguez Carrión se comunicaba periódicamente con la oficina de la licenciada González Rodríguez para darle seguimiento a los casos; podía llamar hasta semanalmente. Cada vez que preguntaba se le informaba que todo se encontraba presentado ante el Tribunal y había que esperar a que el juez dispusiera del asunto. Esa era la misma información que le brindaba la propia licenciada González Rodríguez cuando coincidían en sus visitas al Bufete.

La relación abogado cliente entre la señora Rodríguez Carrión y la licenciada González Rodríguez se extendió desde el año 2008 hasta el año 2012. Durante el periodo de abril de 2012 a diciembre de 2012, la señora Rodríguez Carrión no recibió comunicación alguna de parte de la licenciada González Rodríguez. Tiempo después de haberse acordado la última contratación, la señora Rodríguez Carrión se enteró, por haberlo visto en las noticias, que la licenciada González Rodríguez iba a ser nombrada juez. Llamó, entonces, a la oficina y la señora Trenche le indicó que debía pasar por el despacho legal para dialogar con la licenciada González Rodríguez. Así pues, la señora Rodríguez Carrión se personó al Bufete en diciembre de 2012 y se reunió con la licenciada González Rodríguez. En ese

momento la señora Rodríguez Carrión le cuestionó qué iba a suceder con sus casos que aún estaban pendientes. La licenciada González Rodríguez respondió que se encontraba en el proceso de buscar quién se hiciera cargo de éstos. La señora Rodríguez Carrión le expresó su interés en conocer al abogado o abogada que atendería sus asuntos. La licenciada González Rodríguez quedó en que una vez seleccionara a esa persona, citaría a la señora Rodríguez Carrión para informarle los acuerdos alcanzados. Tras esta reunión, la señora Rodríguez Carrión se mantuvo en espera de que la licenciada González Rodríguez la citara. Sin embargo, no volvió a saber de la licenciada González Rodríguez.

A diciembre de 2012, la licenciada González Rodríguez no remitió una comunicación escrita a la señora Rodríguez Carrión para notificarle que había sido nombrada juez y que estaba en negociaciones con la licenciada Soto Mujica. Tampoco ofreció devolverle los honorarios no devengados o el expediente legal.

Cuando la señora Rodríguez Carrión regresó a la oficina de la licenciada González Rodríguez para conocer sobre el estatus de sus casos, se encontró que la licenciada Soto Mujica estaba a cargo. La señora Rodríguez Carrión pidió entrevistarse con ella porque interesaba conocer qué había sucedido con sus asuntos. Como la licenciada Soto Mujica desconocía las gestiones para las cuales la licenciada González Rodríguez había sido

contratada, solicitó que se buscara el expediente, el cual apareció en los archivos que pertenecían a la licenciada González Rodríguez. Tras examinarlo, la licenciada Soto Mujica observó que no se desprendía que se hubiese presentado trámite alguno en el tribunal y que sólo se encontraban varios certificados de nacimiento y certificaciones negativas de testamento. La licenciada Soto Mujica le solicitó entonces a la señora Rodríguez Carrión que le indicara cuáles eran los servicios acordados con la licenciada González Rodríguez ya que no surgían del expediente. La señora Rodríguez Carrión explicó que se trataba de unas declaratorias de herederos las cuales, según le habían informado, estaban pendientes ante el tribunal. Entonces, la licenciada Soto Mujica verificó con la señora Trenche, quien le reveló que no se había sometido nada en el tribunal. Una vez la licenciada Soto Mujica le participó esta información a la señora Rodríguez Carrión, ésta preguntó por el dinero que le había pagado a la licenciada González Rodríguez puesto que siempre le habían informado que las declaratorias de herederos se encontraban en proceso.

Debido a que la señora Rodríguez Carrión y su familia eran personas de escasos recursos, la licenciada Soto Mujica se ofreció a tramitar la instancia registral y algunas declaratorias de herederos sin cobrar honorarios adicionales con la condición de que ésta asumiera los gastos por concepto de sellos. La señora Rodríguez Carrión

objetó porque ya había pagado por esos trabajos y porque iba a procurar que la juez González Rodríguez le restituyera los honorarios abonados.

La señora Rodríguez Carrión llamó en varias ocasiones a la juez González Rodríguez, pero ésta no contestó sus llamadas. También le envió mensajes de texto sin obtener respuesta. Así las cosas, la señora Rodríguez Carrión decidió enviar una carta por correo certificado en la que cuestionó el por qué su caso no se había trabajado e informó que había dialogado con la licenciada Soto Mujica. Dos o tres semanas después, la entonces juez González Rodríguez se comunicó con ella. Durante esta conversación la señora Rodríguez Carrión le preguntó sobre los trámites relacionados con su caso ya que tras visitar la oficina y reunirse con la licenciada Soto Mujica, no aparecía que se hubiese realizado gestión alguna. Añadió que la propia secretaria le había manifestado que el trabajo no se había llevado a cabo, razón por la cual ella interesaba saber qué iba a suceder. La señora Rodríguez Carrión testificó durante la vista evidenciaria que la juez González Rodríguez le pidió que consiguiera el expediente para ella poder resolver los asuntos que habían quedado pendientes.

La señora Rodríguez Carrión contactó entonces a la secretaria de la licenciada Soto Mujica para solicitar su expediente. Una vez lo consiguió, la señora Rodríguez Carrión intentó comunicarse en varias ocasiones con la juez

González Rodríguez a través de llamadas telefónicas y mensajes de texto sin éxito alguno.

Aunque la juez González Rodríguez no respondió a los intentos de comunicación de la señora Rodríguez Carrión, sí solicitó una reunión con la licenciada Soto Mujica para dialogar sobre los casos de la señora Rodríguez Carrión y cómo podían atenderse. Una vez lograron reunirse, la licenciada Soto Mujica reiteró su disponibilidad para gestionar pro bono las declaratorias de herederos. A base de ello, acordaron que la licenciada Soto Mujica descontaría del canon de arrendamiento mensual del Bufete los gastos por concepto de sellos correspondientes a estas gestiones. Por último, convinieron que la licenciada Soto Mujica no asumiría la representación legal en los asuntos relacionados con el pleito de desahucio hasta tanto se resolvieran las declaratorias de herederos. En ese momento, la licenciada Soto Mujica se reuniría con la señora Rodríguez Carrión para evaluar los pormenores del caso y decidir: si se haría cargo de este asunto y, de así hacerlo, cuáles serían sus honorarios. Aclaró, sin embargo, que esto sería mediante un contrato aparte. En la eventualidad de la licenciada Soto Mujica asumir la representación en el pleito de desahucio, correspondería a la señora Rodríguez Carrión comunicarse con la juez González Rodríguez para que ésta determinara cómo habría de cubrir los honorarios. Es decir, si sería a través de cheque o mediante un crédito al canon mensual de

arrendamiento tal como habían acordado con el gasto de sellos.

La relación abogada cliente entre la licenciada Soto Mujica y la señora Rodríguez Carrión surgió a partir del año 2013, con posterioridad a que la licenciada González Rodríguez asumiera el cargo de juez. Para efectos de la licenciada Soto Mujica, su relación profesional con la señora Rodríguez Carrión se concretó en el momento en que la juez González Rodríguez cubrió los gastos en sellos.

Después de la reunión con la juez González Rodríguez, la licenciada Soto Mujica le informó a la señora Rodríguez Carrión que se haría cargo de gestionar las declaratorias de herederos. Por tal razón, la señora Rodríguez Carrión decidió mantener su expediente en la oficina de la licenciada Soto Mujica, pero únicamente para propósitos del trámite de las declaratorias de herederos. Asimismo, tuvo que gestionar nuevamente la expedición de los documentos requeridos para este proceso. Según testificó la licenciada Soto Mujica, las declaratorias de herederos no se habían presentado en el tribunal. Lo único que halló en el expediente fue un borrador de la planilla de caudal relicto, así como otros documentos que tuvieron que solicitarse nuevamente por haber transcurrido demasiado tiempo desde su expedición.

A la fecha de la vista evidenciaria todavía quedaba pendiente la segregación porque faltaban algunas declaratorias de herederos, aunque ya se habían tramitado

en su mayoría. Las restantes gestiones necesarias para completar los asuntos acordados originalmente con la juez González Rodríguez no se pudieron llevar a cabo porque la licenciada Soto Mujica requería el pago de honorarios para efectuarlos.

La licenciada Soto Mujica señaló que desconocía si se llegó a presentar el pleito de desahucio. Indicó que declinó asumir la representación de la señora Rodríguez Carrión en relación con este caso porque para entonces su comunicación con la juez González Rodríguez había cesado por completo.

### E. Contestación de la Juez González Rodríguez - Ofrecimiento de Pago

En respuesta a las quejas presentadas por las señoras Gómez Correa, Colón Rivera y Rodríguez Carrión la juez González Rodríguez indicó, en síntesis, que previo a comenzar funciones como Juez Superior realizó varias gestiones encaminadas a cerrar su oficina como abogada en la práctica privada. Entre ellas, suscribió un Contrato de Arrendamiento con la licenciada Soto Mujica el 21 de diciembre de 2012 mediante el cual esta última arrendó la propiedad donde ubicaba el despacho legal y adquirió la cartera de expedientes y clientes del Bufete por la suma de veinticuatro mil dólares ($24,000.00). Expuso que dicha transacción "consideró la totalidad de los clientes, casos, gestiones, y asuntos que, a esa fecha, estuviesen pendientes de final disposición". Concluyó que, conforme a lo anterior, los asuntos aludidos por las promoventes en

sus respectivas quejas formaban parte de la cartera de clientes adquirida por la licenciada Soto Mujica y, por lo tanto, le correspondía a ésta hacerse cargo de los trámites que todavía requerían sus asuntos.

De otra parte, en la contestación a la queja presentada por el señor Burgos Villafañe, la juez González Rodríguez pormenorizó las gestiones que realizó, previo a su nombramiento en la judicatura, en torno a su encomienda. Argumentó que dichos trámites, los cuales fueron exhaustivos, estuvieron cubiertos por la cantidad que pagó el promovente. Sostuvo, además, que desde el 2013 el señor Burgos Villafañe conocía que los asuntos pendientes del Bufete habían quedado a cargo de la licenciada Soto Mujica, por lo cual, de interesar continuar con los mismos, tenía que discutir con ésta los pasos a seguir.

Es menester señalar que, según estipulado por las partes, en febrero y marzo de 2016, es decir entre ocho meses a un año y medio después de haberse presentado las quejas, la juez González Rodríguez, a través de su representación legal, ofreció depositar en la OAT la totalidad de los honorarios que le habían pagado los promoventes, excepto en cuanto a la señora Rodríguez Carrión, a quien le ofreció sólo tres mil quinientos dólares ($3,500.00) de los ocho mil dólares ($8,000.00) que ésta le había entregado. Sin embargo, la OAT no estuvo dispuesta a recibirlos.

### F. Conclusiones de la Comisión

La Comisión encontró probadas todas las violaciones éticas enumeradas en la Querella. Las atribuyó a la manera atropellada en que la licenciada González Rodríguez llevó a cabo la transición de abogada a juez la cual caracterizó de desorganizada y descuidada. Notó, además, que la juez González Rodríguez no efectuó las gestiones legales que había acordado con los promoventes contraviniendo de este modo su deber de diligencia y truncando la confianza depositada por sus clientes. Añadió que, el hecho de carecer de documentación pertinente no le eximía de responsabilidad frente a los promoventes puesto que cuando éstos se comunicaban con la oficina para indagar sobre el estatus de sus asuntos se les informaba que se estaban trabajando. Además, tampoco se realizaron esfuerzos razonables para advertirles que los trámites no podían progresar sin los documentos pertinentes.

Asimismo, la Comisión determinó que la juez González Rodríguez incumplió con su deber de notificarle a los promoventes su inhabilidad de continuar representándoles; informarles la situación de sus respectivos asuntos, y devolverles sin dilación la parte de los honorarios adelantados por gestiones no realizadas, así como los expedientes de sus casos. Peor aún, una vez ocupó su cargo de juez, ignoró los reclamos de estos ex clientes para que les devolviera los honorarios no devengados y sus expedientes. Además, la inacción en atender los

requerimientos de quienes fueron sus representados afectó la tramitación de sus acciones pues no contaban con recursos económicos para contratar nueva representación legal.

Del mismo modo la Comisión concluyó que la juez González Rodríguez cedió sus casos y expedientes a la licenciada Soto Mujica sin la anuencia previa de los promoventes. En este sentido percibió que, en lugar de velar por los intereses particulares de sus clientes, los esfuerzos de la juez González Rodríguez en ese momento iban dirigidos más bien a procurar un arreglo económico satisfactorio a cambio de su "cartera de clientes".

En consideración a la seriedad de las violaciones, el comportamiento antiético repetido, así como el menoscabo a la imagen de la judicatura y a la profesión de la abogacía el Comité recomendó su destitución del cargo de Juez Superior y su suspensión indefinida del ejercicio de la abogacía.

Por su parte, la juez González Rodríguez, a través de su representación legal, sometió su respuesta al Informe de la Comisión donde cuestionó algunas de las determinaciones referentes a violaciones éticas, así como la severidad de la sanción recomendada. Planteó que la destitución del cargo judicial, además de la separación del ejercicio de la abogacía, no guardan correspondencia con los precedentes de este Tribunal.

### III. DERECHO APLICABLE

En el ensamblaje gubernamental establecido por mandato constitucional, la judicatura tiene un rol fundamental en su función de impartir justicia. A su vez, la legitimidad de la institución que representan los jueces depende, en gran medida, de que los miembros que la conforman exhiban una conducta ejemplar en todo momento modelada acorde a los principios éticos que rigen su comportamiento como profesionales del Derecho. Los jueces encarnan la imagen de la Rama Judicial y su comportamiento desacertado lacera la percepción pública y la confianza en la institución que juramentaron servir.

Dado el sitial privilegiado que ocupa un juez en nuestro entorno social, la reglamentación ética que le afecta es necesariamente una rigurosa en extremo. Su conducta está sujeta a una fiscalización meticulosa en todo momento y vienen llamados a modelar con su ejemplo. Es por ello que todo abogado que aspira a ocupar un cargo judicial debe contar con un desempeño profesional caracterizado por la excelencia ética. Es decir, debe distinguirse como fiel cumplidor de los postulados de integridad y servicio a la justicia.

La autoridad exclusiva para atender los procedimientos disciplinarios atinentes a los jueces y juezas del Tribunal de Primera Instancia, así como del Tribunal de Apelaciones, recae sobre este Foro por mandato constitucional. Art. V, Sec. 11, Const. PR, LPRA, Tomo 1

(2016). *In re* Hon. Colón Colón, 197 DPR 728 (2017); *In re* González Porrata-Doria, 197 DPR 683 (2017); *In re* Candelaria Rosa, 197 DPR 445 (2017); *In re* Acevedo Hernández, 194 DPR 344 (2015); *In re* Quiñones Artau, 193 DPR 356 (2015).

Acorde con este cometido, aprobamos los Cánones de Ética Judicial donde fijamos unas reglas mínimas que rigen la conducta de aquellos que tienen el honor de servir como parte de la Judicatura en nuestra Isla. Esta normativa tiene como propósito preservar la confianza de la ciudadanía en el sistema de justicia a la vez de afianzar la independencia judicial, componente fundamental de nuestro sistema democrático de gobierno. Preámbulo de los Cánones de Ética Judicial de 2005, 4 LPRA Ap. IV-B (2012). Véanse, además, *In re* Hon. Colón Colón, *supra*; *In re* González Porrata-Doria, *supra*; *In re* Candelaria Rosa, *supra*.

El Art. 6.001 de la Ley de la Judicatura del Estado Libre Asociado de Puerto Rico de 2003, Ley Núm. 201-2003, 4 LPRA sec. 25i (2010) (**Ley Núm. 201-2003**), establece que todo juez o jueza del Tribunal de Primera Instancia y del Tribunal de Apelaciones que contravenga los Cánones de Ética Judicial, los Cánones de Ética Profesional o la reglamentación administrativa aplicable estará sujeto a medidas disciplinarias. Las sanciones autorizadas por violaciones a estas normas varían de acuerdo con las circunstancias particulares de cada caso y oscilan desde la

destitución del cargo y suspensión de empleo y sueldo, hasta limitaciones al ejercicio de la abogacía, incluyendo el desaforo, la censura, amonestación, o cualquier otra medida correctiva.[2]

Según provisto en el Art. 6.006 de la Ley Núm. 201-2003, 4 LPRA sec. 25n (2010), en casos de quejas iniciadas contra estos miembros del sistema judicial, por contravenir los esquemas éticos previamente mencionados o algún tipo de norma administrativa, se seguirá el procedimiento establecido en las Reglas de Disciplina Judicial, 4 LPRA Ap. XV-B (2012 y Supl. 2018). A través del trámite dispuesto en dicho cuerpo de normas procesales, se procura atender los asuntos disciplinarios atinentes a la judicatura de manera ágil y a la vez garantizar que se cumpla con los imperativos del debido proceso de ley. Regla 2 de Disciplina Judicial, 4 LPRA Ap. XV-B (2012).

Los cargos éticos imputados a un juez deberán ser probados mediante "prueba clara, robusta y convincente". Regla 25 de Disciplina Judicial, 4 LPRA Ap. XV-B (2012). A pesar de que esta exigencia es más estricta que la de preponderancia de la prueba normalmente utilizada en casos civiles, se distingue igualmente del requisito de prueba más allá de duda razonable aplicado a los procesos penales. *In re* Candelaria Rosa, *supra*; *In re* Acevedo Hernández, *supra*. Hemos descrito su alcance de la siguiente manera:

---

[2] En efecto, el trámite provisto para el procedimiento disciplinario contra jueces o juezas aplica igualmente a violaciones al Código de Ética Profesional. Regla 3(a) de Disciplina Judicial, 4 LPRA Ap. XV-B (Supl. 2018).

Tal carga probatoria es mucho más sólida que la preponderancia de la evidencia, pero menos rigurosa que la prueba más allá de toda duda razonable que exige el proceso penal. La prueba clara, robusta y convincente es una prueba que produce en un juzgador de hechos una convicción duradera de que las contenciones fácticas son altamente probables.

*In re* Acevedo Hernández, *supra*, pág. 364. Véase, además, *In re* Candelaria Rosa, *supra*.

A tono con el procedimiento provisto en las Reglas de Disciplina Judicial, corresponde a la Comisión la importante tarea de aquilatar la prueba recopilada durante el trámite disciplinario para someter a nuestra consideración las determinaciones de hechos, conclusiones de derecho y recomendaciones que estime pertinentes. *In re* Acevedo Hernández, *supra*. Según hemos señalado anteriormente, las determinaciones de hechos que tenga a bien realizar la Comisión merecen nuestra deferencia. *In re* Quiñones Capacetti, 195 DPR 281 (2016); *In re* Acevedo Hernández, *supra*. Consiguientemente, no alteraremos dichas determinaciones excepto en aquellas situaciones en que se demuestre que medió parcialidad, prejuicio o error manifiesto. *In re* Candelaria Rosa, *supra*; *In re* Claverol Siaca, 175 DPR 177 (2009); *In re* Busó Aboy, 166 DPR 49 (2005). La razón para conferirle esta consideración especial a la Comisión responde a que, en su tarea de evaluar si las imputaciones éticas están debidamente sostenidas, ésta opera similar a un juzgador de primera instancia. Consiguientemente, está en mejor posición de aquilatar la prueba testifical que se presente en el

trámite disciplinario. *In re* Candelaria Rosa, *supra*. Ahora bien, en aquellos casos en que no se utilicen testigos como parte de la prueba desfilada en una vista adjudicativa, estamos en igual posición que la Comisión para realizar nuestra propia evaluación de la prueba documental que obre en el expediente del proceso disciplinario. *In re* Candelaria Rosa, *supra*.

Sin embargo, no venimos obligados a ratificar el informe preparado por la Comisión en torno a una querella disciplinaria. Queda a discreción de este Tribunal, conforme a su autoridad en materia disciplinaria sobre los jueces, adoptarlo, modificarlo o rechazarlo. *In re* González Porrata-Doria, *supra*; *In re* Candelaria Rosa, *supra*; *In re* Quiñones Capacetti, *supra*; *In re* Acevedo Hernández, *supra*. Esto incluye, acorde con nuestra facultad reguladora, la potestad de imponer una sanción disciplinaria distinta a la propuesta por la Comisión en su informe y que este Foro estime adecuada a tono con las circunstancias que se presenten caso a caso. *In re* González Porrata-Doria, *supra*; *In re* Quiñones Capacetti, *supra*; *In re* Acevedo Hernández, *supra*.

Además de cumplir con la normativa provista en los Cánones de Ética Judicial, los magistrados vienen obligados a observar los postulados que gobiernan el comportamiento de los abogados, según éstos aparecen consignados en el Código de Ética Profesional. Dada su condición de letrados, aun luego de juramentar a su cargo, los jueces y

juezas continúan sujetos a las normas éticas que rigen la conducta de los abogados. De manera que, durante el transcurso de su mandato, los magistrados deben acatar, tanto las pautas éticas formuladas específicamente para la judicatura, como aquellas aplicables a la clase togada. *In re* Acevedo Hernández, *supra*; *In re* Grau Acosta, 172 DPR 159 (2007). "El ejercicio que de la autoridad judicial hagan el juez o la jueza – quien ocupa el cargo porque es abogado o abogada – no le puede relevar de las normas básicas de conducta que los valores éticos de su condición profesional le imponen". *In re* Acevedo Hernández, *supra*, pág. 372

Por lo tanto, en función de lo anterior, estamos facultados también para, a través del procedimiento disciplinario diseñado específicamente para los jueces, examinar la conducta de éstos bajo el crisol de los preceptos éticos aplicable a los abogados e imponer las sanciones que correspondan. *In re* Acevedo Hernández, *supra*; *In re* Grau Acosta, *supra*.

**A. Canon 18 de Ética Profesional – Competencia**

A tenor con el Canon 18 de Ética Profesional, 4 LPRA Ap. IX (2012) (**Canon 18**), cuando un abogado se obliga profesionalmente con un cliente es responsable de conducir los asuntos delegados de manera capaz, competente y diligente desplegando en todo momento el máximo de sus habilidades y conocimientos. *In re* Federico O. López Santiago, 2018 TSPR 31, 199 DPR ___ (2018); *In re* Julio C.

Blain León, 2018 TSPR 11, 199 DPR ___ (2018); *In re* Nazario Díaz, 198 DPR 793 (2017); *In re* Avilés Vega, 197 DPR 829 (2017). Es decir, se compromete a defender los intereses de su representado de forma capaz y expedita.

Según explica el Hon. Sigfrido Steidel Figueroa, "[e]n el contexto de la gestión profesional de un abogado, la diligencia implica que este realice las gestiones que le fueron encomendadas en momento oportuno, en forma adecuada y sin dilaciones que puedan afectar la pronta solución de una controversia". S. Steidel Figueroa, Ética para Juristas: Ética del Abogado y Responsabilidad Disciplinaria, [s.l.], Ed. Situm, 2016, págs. 220-221.

De manera que, como parte de nuestra autoridad para regular la profesión jurídica, venimos obligados a cotejar que los abogados ejerzan sus funciones de una manera responsable, competente y diligente. In re Yanira Santiago Santiago, 2018 TSPR 46, 199 DPR ___ (2018).

El Canon 18 específicamente advierte a los abogados su obligación de declinar el aceptar responsabilidades profesionales cuando se vean imposibilitados de rendir una labor idónea y competente. De igual manera, les previene de pactar sus servicios si no están en posición de prepararse adecuadamente sin que ello conlleve demoras irrazonables a su cliente o a la administración de la justicia. A la luz de las consideraciones antes expuestas, este deber ético resulta incompatible con la "desidia, despreocupación, displicencia, indiferencia e inacción" al

atender aquellas faenas que le han sido encomendadas por su representado. *In re* Federico O. López Santiago, *supra*; *In re* Julio C. Blain León, *supra*; *In re* Avilés Vega, *supra*; *In re* Feliciano Rodríguez, 198 DPR 369 (2017). Igualmente está proscrito el abandono o desatención de la causa de acción de un cliente. *In re* Federico O. López Santiago, *supra*.

Consecuentemente, bajo esta normativa, se reputa negligente y, por lo tanto, transgrede el Canon 18 un abogado que, luego de ser contratado, no toma acción alguna para hacer valer los derechos de sus representados y se desentiende del caso. *In re* Avilés Vega, *supra*; *In re* Rosario Vázquez, 197 DPR 237 (2017).

### B. Canon 19 de Ética Profesional – Información al Cliente

El Canon 19 del Código de Ética Profesional, 4 LPRA Ap. IX (2012) (**Canon 19**), le impone a todo abogado el deber de mantener a su cliente informado de aquellos asuntos "importantes" que surjan durante la tramitación del asunto para el cual fue contratado. Esta obligación opera independiente del deber de diligencia comprendido en el Canon 18. *In re Nazario Díaz*, *supra*; *In re* Rosario Vázquez, *supra*.

Para viabilizar esta exigencia ética resulta imperativo que el letrado sostenga una comunicación efectiva con sus representados. *In re* Nazario Díaz, *supra*; *In re* Rosario Vázquez, *supra*. A su vez, mantener ese tipo de comunicación es inherente al compromiso de fiducia que

define la relación abogado cliente. *In re* Rosario Vázquez, *supra*. Claro está, el cumplimiento con este canon será viable únicamente si el abogado está "disponible y accesible" a su cliente. *In re* Rodríguez Lugo, 175 DPR 1023, 1029 (2009).

De este modo se garantiza que el cliente cuente con suficientes elementos de juicio que le permitan tomar decisiones informadas durante el trámite de los asuntos confiados a su abogado. *In re* Avilés Vega, *supra*. Acorde lo anterior, resulta imprescindible que el abogado le participe a su representado las gestiones realizadas y el desarrollo de su caso; le consulte los asuntos que estén fuera de su discreción como representante legal, y acate sus exigencias, siempre y cuando éstas no contravengan algún principio ético. *In re* Nazario Díaz, *supra*.

Por consiguiente, un abogado infringe este postulado cuando ignora los reclamos de información de su cliente; no le advierte sobre algún resultado desfavorable relativo al asunto delegado; no le mantiene al tanto del estado o situación procesal del caso, "o simplemente le niega información de su caso". *In re* Nazario Díaz, *supra*, pág. 804; *In re* Vázquez Bernier, 198 DPR 459 (2017); *In re* Hernández López, 197 DPR 340 (2017). No podemos olvidar que "'los casos pertenecen a los clientes y éstos tienen derecho a mantenerse informados de todos los asuntos y las gestiones importantes que se susciten en la tramitación de

[los mismos]'". *In re* Avilés Vega, *supra*, pág. 843, citando a *In re* Rosario Vázquez, *supra,* pág. 249.

### C. Canon 20 de Ética Profesional – Renuncia de Representación Legal

El Canon 20 de Ética Profesional, 4 LPRA Ap. IX (2012) (**Canon 20**), dicta con precisión los pasos que debe seguir un abogado para renunciar a la representación legal de sus clientes en armonía con sus deberes éticos. Esta disposición impone obligaciones taxativas a los letrados independientemente de si han comparecido o no ante el tribunal a nombre de su cliente. De manera que, previo a renunciar a la representación, todo abogado vendrá obligado a realizar aquellas gestiones necesarias para evitar el menoscabo de los derechos de su cliente tales como: notificarle de su renuncia; orientarle debidamente sobre la necesidad de una nueva representación legal cuando sea necesario; concederle tiempo para procurar una nueva representación legal; y advertirle sobre fechas límites y términos que impacten su causa de acción.

Como parte del proceso de renuncia, igualmente se le exige al abogado que le entregue a su cliente el expediente, así como todo documento relacionado con el caso. *In re* Federico O. López Santiago, *supra*; *In re* García Ortiz, 198 DPR 432 (2017). No podemos perder de vista que, tanto el expediente, como la causa de acción, pertenecen exclusivamente al cliente. *In re* Federico O. López Santiago, *supra*. Esta obligación debe cumplirse sin dilación. Es decir, tan pronto el abogado renuncie a la

representación legal o cuando el cliente así lo solicite. *In re* Federico O. López Santiago, *supra*; *In re* García Ortiz, *supra*.

El Canon 20 igualmente dispone que, cuando se materialice la renuncia, el abogado debe "reembolsar inmediatamente cualquier cantidad adelantada que le haya sido pagada en honorarios por servicios que no se han prestado". Véanse *In re* Federico O. López Santiago, *supra*; *In re* Martí Rodríguez, 194 DPR 467 (2016); *In re* Pestaña Segovia*,* 192 DPR 485 (2015). Conteste a ello, anteriormente hemos advertido que comete una grave falta el abogado que retiene para sí dineros abonados por su cliente en calidad de honorarios sin realizar la labor para la cual fue contratado. *In re* Prado Galarza, 195 DPR 894 (2016); *In re* Martí Rodríguez, *supra*.

Por último, si a pesar de los intentos del abogado, el cliente no coopera o deja de proveer documentación o datos fundamentales para poder encauzar la gestión encomendada, lo que corresponde es la renuncia a la representación legal. Véase *In re* Federico O. López Santiago, *supra*.

### D. Canon 27 de Ética Profesional – Colaboración Profesional

En consonancia con el principio de lealtad y confianza que sirve de base a la relación entre un abogado y su cliente, el Canon 27 de Ética Profesional, 4 LPRA Ap. IX (2012), dispone que un letrado no puede referirle los asuntos encomendados por su representado a otro colega sin

que medie el conocimiento y consentimiento del cliente. *In re* Guadalupe, Colón, 155 DPR 135 (2001); *In re* Cardona Vázquez, 108 DPR 6 (1978). Esta prohibición se extiende igualmente a la entrega del expediente del caso a otro abogado sin haber procurado previamente la anuencia del cliente. *In re* Cardona Vázquez, *supra*.

El hecho del abogado encontrarse enfermo o mudarse fuera de la jurisdicción no le exime del cumplimiento con las exigencias del Canon 27 de Ética Profesional, *supra*. *In re* Guadalupe, Colón, *supra*; *In re* Cardona Vázquez, *supra*.

**E. Canon 35 de Ética Profesional – Sinceridad y Honradez**

Por su parte, el Canon 35 de Ética Profesional, 4 LPRA Ap. IX (2012) (**Canon 35**), destaca la importancia de los letrados conducirse, ante todo, con sinceridad y honradez en los tratos con sus representados, sus compañeros de profesión, así como con el tribunal. El rol fundamental del abogado está vinculado inherentemente a la defensa y búsqueda de la verdad. Consecuentemente, el apartarse de la verdad resulta incompatible con esa gestión. *In re* Nazario Díaz, *supra*. "A tales efectos, hemos expresado que el compromiso de un abogado con la verdad debe ser siempre incondicional, ello debido a que 'más que un ideal irrealizable, la verdad es atributo inseparable del ser abogado'". *In re* Grau Acosta, *supra*, pág. 175, citando a *In re* Busó Aboy, *supra*. De manera que, se vulnera el Canon 35 al actuar contrario a los principios

de honradez y veracidad, pilares de la profesión jurídica. *In re* Acevedo Hernández, *supra*.

Dado que la veracidad es una característica esencial en el desempeño de la abogacía, no es necesario que medie intención o mala fe para que se transgreda el Canon 35. *In re* Pagani Padró, 198 DPR 812 (2017); *In re* Feliciano Rodríguez, *supra*; *In re* Busó Aboy, *supra*.

### F. Canon 38 de Ética Profesional – Preservación del Honor y Dignidad de la Profesión

Por último, corresponde delinear los postulados éticos enunciados en el Canon 38 de Ética Profesional, 4 LPRA Ap. IX (2012) (**Canon 38**). Esta disposición expresamente le exige a todo abogado "esforzarse, al máximo de su capacidad, en la exaltación del honor y dignidad de su profesión, aunque el así hacerlo conlleve sacrificios personales y debe evitar hasta la apariencia de conducta impropia". Íd. En este sentido hemos indicado que, conforme a la confianza depositada en él por razón del título que ostenta y su rol en la sociedad, corresponde a los abogados proceder de manera digna y honorable, tanto en el ámbito de su vida privada, como en el desempeño de su vida profesional. *In re* Nazario Díaz, *supra*; *In re* Acevedo Hernández, *supra*. Por lo tanto, todo abogado que no se conduce digna y honorablemente infringe el Canon 38 del Código de Ética Profesional. *In re* García Vega, 189 DPR 741 (2013).

Cabe destacar que la conducta de un letrado no puede examinarse de manera individual y aislada del ámbito

público.    El   abogado   no   puede   desligarse   de   la
trascendencia de su título que va más allá de la relación
profesional que tiene con sus clientes.    Según hemos
reiterado, los abogados reflejan la imagen de la profesión,
por lo que vienen obligados a comportarse con el más
escrupuloso sentido de responsabilidad acorde la función
social que ejercen.    *In re* Nazario Díaz, *supra*; *In re*
Vázquez Bernier, *supra*.    De manera que "la confianza,
respeto e imagen que la sociedad deposita en cada uno de
los abogados, en la profesión y en la institución de la
justicia   desmerece   cuando   la   actuación   del   jurista
representa incorrección".    *In re* Nazario Díaz, *supra*, pág.
806, citando a *In re* Irizarry Rodríguez, 193 DPR 633, 666
(2015).

### G. Canon 1 de Ética Judicial – Cumplimiento de la Ley

El primero de los Cánones de Ética Judicial[3] reconoce
el deber ineludible de todo juez de respetar y cumplir las
leyes en todo momento, así como ser fiel al juramento que
prestó al momento de su investidura.[4]    Esta normativa se
incorporó por primera vez de manera expresa a nuestro
esquema ético judicial junto a otros cambios introducidos

---

[3]    Este postulado corresponde al Canon 2A del Código Modelo de Conducta
Judicial de 1990 promulgado por la *American Bar Association* en lo pertinente a
la obligación de los jueces de cumplir con la ley.    Véase *Historial* del Canon
1, 4 LPRA Ap. IV-B (2012).    Años más tarde el requerimiento de que los jueces
observen la ley pasó a formar parte de la Regla 1.1 del Código Modelo de
Conducta Judicial del *American Bar Association* de 2007.

[4]    El Canon 1 de Ética Judicial, 4 LPRA Ap. IV-B (2012), dispone como
sigue: "Las juezas y los jueces respetarán y cumplirán la ley y serán fieles al
juramento de su cargo".

en el 2005.[5]   Conforme refleja el Historial del Canon 1, 4 LPRA Ap. IV-B (2012), su adopción estuvo inspirada por el Juramento de Fidelidad[6] que vienen obligados a prestar los funcionarios judiciales previo a ocupar su cargo y mediante el cual se comprometen a defender, tanto la Constitución de los Estados Unidos, como la Constitución y demás leyes de Puerto Rico.

Es lógico que los postulados normativos que rigen el cometido de la judicatura inicien con este mandato sencillo, pero de vital importancia.  La responsabilidad fundamental de un magistrado es precisamente velar por la aplicación justa e imparcial de las leyes con el propósito de asegurar su observancia.  Mal podría un juez exigirle a otros el cumplimiento con los preceptos legales cuando él mismo se aparta de ellos.  Conforme a los comentarios del Canon 1, esta directriz "se establece con el objetivo de transmitir claramente la idea de que los jueces no están por encima de la ley y son los primeros llamados a respetarla y cumplirla".  *In re* Candelaria Rosa, *supra*, pág. 465.  "La norma ética básica que se impone sobre los jueces es cumplir con la ley.  No podemos evadir esa responsabilidad si pretendemos que otros la acaten […]".  *In re* González Acevedo, 165 DPR 81, 104 (2005).

---

[5]      Anteriormente habíamos resuelto que el Canon I, conjuntamente al Canon XXVI del Código de Ética Judicial de 1977, les imponían a los jueces el deber de cumplir con la ley.  Véase *In re* Ruiz Rivera, 168 DPR 246, 259 (2006).

[6]      Art. 2A del Código Político de Puerto Rico, según enmendado, 3 LPRA sec. 601 (2017).  Este juramento es mandatorio a funcionarios de la judicatura, así como a funcionarios en otras Ramas de Gobierno.

De manera que el respetar y cumplir con la ley, según provisto en el Canon 1, emerge como uno de los compromisos ineludibles para cada miembro de la Judicatura. *In re* Claverol Siaca, *supra*. Los jueces tienen la obligación de observar estrictamente lo dispuesto en nuestro ordenamiento jurídico. Íd. "[E]s un deber consustancial al cargo de juez cumplir también con la ley, los postulados éticos que rigen el ejercicio de la abogacía y las normas administrativas aplicables". *In re* Grau Acosta, *supra*, pág. 173. Aquellos miembros de la judicatura que de alguna manera se desvíen del cumplimiento con el ordenamiento legal estarán expuestos a sanciones disciplinarias. Así, por ejemplo, en *In re* Acevedo Hernández, *supra*, recurrimos a este postulado en el caso de un juez condenado por delitos de conspiración y soborno.

Ahora bien, también hemos decretado que se infringen los postulados del Canon 1 por faltar un juez a los deberes intrínsecos de su posición. En *In re* Candelaria Rosa, *supra*, específicamente resolvimos que al magistrado utilizar el proceso de inhibición como vehículo de protesta en contra del Tribunal de Apelaciones denotó una "seria desobediencia a su deber de desempeñar sus funciones y [cumplir con] su juramento […] fielmente. Íd., pág. 467. El uso indebido de este mecanismo procesal con el propósito de desligarse del caso no solamente fue errado, sino que igualmente sirvió de subterfugio para el juez evadir y descuidar obligaciones inherentes a su cargo judicial.

## IV. DISCUSIÓN DE VIOLACIONES ÉTICAS

### A. Canon 18 de Ética Profesional - Diligencia

Del Informe de la Comisión se desprende que, a la fecha en que la juez González Rodríguez asumió su cargo, todavía quedaban pendientes de concluir servicios legales contratados y pagados por los promoventes.

En su defensa, la juez González Rodríguez planteó que estaba impedida de gestionar los trámites acordados con los promoventes por falta de documentación a ser provista por éstos. Sin embargo, la falta de documentos se estipuló únicamente en lo concerniente a la señora Gómez Correa y la señora Colón Rivera. No se presentó prueba conducente a establecer que los otros dos promoventes se encontraban en igual situación. Quiere esto decir que nada le impedía llevar a cabo las diligencias para las cuales la señora Rodríguez Carrión y el señor Burgos Villafañe la contrataron, máxime cuando éstos habían adelantado los honorarios que le fueron requeridos como condición a la contratación de sus servicios.

En lo que respecta a la señora Rodríguez Carrión, la licenciada Soto Mujica testificó que del expediente no se desprendía que se hubiese presentado trámite judicial alguno asociado a los múltiples asuntos que le habían sido delegados a la licenciada González Rodríguez.

Igualmente, según el testimonio del señor Burgos Villafañe, cuando finalmente logró inspeccionar el expediente de su caso, aparte de la documentación que él

mismo había provisto, únicamente encontró un papel manuscrito de la señora Trenche, otro de la licenciada González Rodríguez y alrededor de dos o tres papeles más. Por lo tanto, no surgía que se hubiesen efectuado las gestiones necesarias para examinar la posibilidad de impugnar el testamento, según el acuerdo alcanzado entre el promovente y la licenciada González Rodríguez.

En lo que respecta a las otras dos promoventes, es decir, la señora Gómez Correa y la señora Colón Rivera, la licenciada González Rodríguez no podía eludir su responsabilidad ética atribuyéndoles la falta de información para tramitar las gestiones acordadas. De ser este el caso, recaía sobre la letrada la responsabilidad de oportunamente solicitarles la documentación pertinente. Si, a pesar de sus requerimientos las representadas fallaban en proveer la documentación o información necesaria para completar su encomienda, entonces procedía advertirles que no podría continuar con el caso bajo esas circunstancias y renunciar a su representación legal. Es importante tomar en consideración que, excepto en el caso de la señora Gómez Correa,[7] los promoventes habían adelantado el monto total de los honorarios requeridos por la abogada para efectuar los diversos asuntos contratados.

A base de lo anterior, no cabe duda de que la licenciada González Rodríguez falló al no atender los

---

[7] La Sra. Migdalia Gómez Correa pagó tres mil dólares ($3,000.00) del total de seis mil dólares ($6,000.00) requeridos por la Lcda. Gema González Rodríguez.

trabajos que le fueron confiados por los promoventes de manera competente y diligente. Conforme a los postulados éticos consignados en el Canon 18, le estaba vedado aceptar estos compromisos si no estaba en condiciones de atenderlos de forma idónea y oportuna. Además, según señalamos anteriormente, tampoco podía asumir un rol pasivo en torno a aquellos clientes que no habían completado la documentación pertinente para ultimar los trámites legales acordados. Cobra particular relevancia el hecho de que estos clientes se comunicaban con cierta regularidad con el Bufete para verificar el estatus de sus asuntos. Además, la prueba no refutada apunta a que la licenciada González Rodríguez contaba con datos suficientes para contactar a estos representados y, de este modo, darle seguimiento a la información que necesitaba para poder cumplir con su deber de proveerles una representación adecuada.

### B. Canon 19 de Ética Profesional– Información al Cliente

Igualmente falló la letrada al no mantener a los promoventes informados sobre el estatus de sus respectivos casos conforme exige el Canon 19. Éstos declararon de forma unánime que en ningún momento la licenciada González Rodríguez se comunicó con ellos para dejarles saber cómo iban las gestiones para las cuales contrataron sus servicios. Por el contrario, eran los clientes quienes se veían forzados a contactar el despacho legal para mantenerse al tanto del progreso de sus casos.

El señor Burgos Villafañe testificó que tomó la iniciativa para conocer los pormenores de sus encomiendas, así como las gestiones encaminadas a disponer de sus asuntos, mas sin embargo, la licenciada González Rodríguez nunca atendió personalmente sus interrogantes. Simplemente se le informó, a través de la señora Trenche, que sus trámites estaban encaminados. Como parte de su testimonio el señor Burgos Villafañe advirtió que llamaba constantemente al despacho legal desde el estado de la Florida, donde reside, para conocer cómo progresaba su caso. La señora Trenche le respondía sus llamadas y le comunicaba en todo momento que se estaba trabajando el caso.

Por su parte, la señora Gómez Correa testificó que se comunicó con la oficina de la licenciada González Rodríguez en al menos dos o tres ocasiones. Siempre le atendió la secretaria quien le indicó que se estaba trabajando en sus asuntos. De acuerdo con la señora Rodríguez Carrión, ella llamó a la oficina de la licenciada González Rodríguez "[m]uchas veces, muchas veces, muchas veces. Yo llamaba periódicamente, semanal" con el fin de conocer el estatus de los casos contratados. Transcripción de Vista Evidenciaria, pág. 106.

### C. Canon 20 de Ética Profesional - Renuncia de Representación Legal

Entre las responsabilidades impuestas a los abogados por el Canon 20 como condición a su renuncia de la representación legal, se destaca la obligación de informar

a sus clientes el estatus de los asuntos que le fueron encomendados. Ello conlleva forzosamente la obligación implícita de notificarles su decisión de descontinuar la relación abogado cliente. Esta gestión es fundamental al trámite pues, de lo contrario, el ex cliente estaría descansando en la falacia de que sus casos están siendo debidamente atendidos a pesar de que el abogado ya no le está representando. No podemos olvidar que con la renuncia se da por terminada una relación establecida entre un lego y su abogado en quien el cliente ha depositado su total confianza para velar por sus intereses. Asimismo, urge que se ponga al cliente en posición de conseguir una nueva representación que atienda responsablemente los asuntos legales que aún quedan pendientes de manera que no se afecten sus derechos.

Cónsono con lo anterior, el abogado igualmente viene obligado a entregar el expediente a su ex cliente sin dilación alguna, para de este modo poder viabilizar una transición ordenada y evitar que se lesionen los derechos del que fuera su representado. Además, no podemos olvidar que el expediente le pertenece al cliente, y no al abogado, por lo que no existe razón válida para retenerlo.

Por último, pero no menos importante, el Canon 20 exige que, al momento de la renuncia, el abogado reembolse de inmediato los honorarios pagados por servicios no prestados. Actúa de manera indebida un representante legal que retiene para sí dineros que no le corresponden, puesto

que no ha realizado la labor encomendada. Además, le hace un desfavor a la justicia un letrado que interfiere con la posibilidad del cliente de procurar nueva representación legal si éste no cuenta con suficientes fondos para pagar nuevamente los honorarios requeridos para ello.

### (1) Notificación de Renuncia

Las partes estipularon que, a diciembre de 2012, la licenciada González Rodríguez no le remitió comunicación escrita a ninguno de los promoventes ni se comunicó por vía telefónica para notificarle que había sido nombrada juez, lo que le imposibilitaba continuar representándoles. Tampoco les informó que estaba en negociaciones con la licenciada Soto Mujica para que continuara con la representación de los clientes del Bufete.

Así pues, tres de los promoventes conocieron del nombramiento como resultado de sus propias diligencias dirigidas a verificar el estatus de los asuntos que le habían encargado a la licenciada González Rodríguez. Por su parte, la señora Rodríguez Carrión se enteró de la noticia a través de la televisión, la cual confirmó posteriormente a través de la señora Trenche.

A base de lo anterior, unido al testimonio provisto por los promoventes durante la vista, surge inequívocamente que la licenciada González Rodríguez ignoró por completo el imperativo de comunicarle a los promoventes su renuncia a la representación de los asuntos para los cuales contrataron sus servicios. Tampoco cumplió con su

obligación de informarles el estatus de sus casos para esa fecha.

En su defensa la juez González Rodríguez argumentó que la Comisión estaba impedida de concluir que hubo ausencia total de gestiones para contactar a **todos** sus clientes a los fines de notificarles el cese de su práctica privada.[8] Planteó además, que conforme las partes estipularon, le solicitó a su secretaria que la asistiera en el proceso de contactar a los clientes para notificarles sobre el cierre inminente de su oficina, así como de las negociaciones con la licenciada Soto Mujica.

No obstante, la obligación de notificar su renuncia a los clientes y hacerles saber en qué situación se encontraban sus respectivos casos, según exige el Canon 20, recaía en la licenciada González Rodríguez. Es decir, era su responsabilidad transmitir esta información a sus representados ya fuese en persona, por teléfono, o por escrito, dependiendo de las circunstancias particulares de cada caso. Por lo tanto, aunque podía recabar la ayuda de su secretaria en el proceso, la licenciada González Rodríguez estaba impedida de delegar enteramente este trámite en su empleada sin rendición de cuentas y asumir que eso era suficiente para propósitos éticos.

Al actuar de ese modo no tomó en consideración las posibles consecuencias de su omisión en cuanto a los

---

[8]     Sobre este particular, puntualizamos que nuestra determinación en torno a las violaciones éticas en este caso se basa exclusivamente en las estipulaciones sometidas por las partes y la prueba desfilada en torno a los cuatro promoventes.

promoventes, quienes ni siquiera estaban al tanto de lo que quedaba pendiente en relación a sus casos.

### (2) Honorarios

Las partes estipularon que a diciembre de 2012 los promoventes no solicitaron, ni la licenciada González Rodríguez ofreció devolver, los honorarios pagados y no devengados. Igualmente estipularon que, a partir del 17 de febrero de 2016 la jueza González Rodríguez, a través de su representación legal, puso la totalidad de los honorarios pagados a la disposición de las señoras Gómez Correa y Colón Rivera, así como $3,500.00 a la señora Rodríguez Carrión por concepto de gestiones no culminadas. Asimismo, a partir del 14 de marzo de 2016 le ofreció al señor Burgos Villafañe el reembolso íntegro de los honorarios abonados por éste.

En otras palabras, quedó admitido por la juez González Rodríguez que no fue hasta el 2016, transcurridos más de tres años desde que ocupó la magistratura y ya iniciado el trámite disciplinario, que por primera vez ofreció a los promoventes aquello a lo que tenían derecho inequívocamente desde diciembre de 2012 conforme a las disposiciones del Canon 20. Es decir, la licenciada González Rodríguez no rindió cuenta de los honorarios que le correspondían, si alguno, por las labores realizadas a favor de cada uno de los promoventes desde que éstos le entregaron el dinero hasta finales del año 2012 cuando, *de facto*, renunció a su representación legal.

### (3)   Devolución de Expedientes

Según mencionamos anteriormente, parte de las obligaciones impuestas categóricamente por el Canon 20 es la entrega inmediata de los expedientes a los clientes tan pronto ocurra la renuncia a la representación legal. Esto no aconteció con ninguno de los promoventes. De hecho, las partes estipularon que a diciembre de 2012 éstos no solicitaron, ni la licenciada González Rodríguez ofreció, la devolución de sus expedientes legales. Igualmente estipularon que estos expedientes se encontraban entre aquellos que la licenciada Soto Mujica mantuvo en la oficina legal. No fue hasta que los promoventes llevaron a cabo gestiones afirmativas al respecto, ya cuando la juez González Rodríguez ejercía las funciones de su cargo, que finalmente pudieron obtenerlos.

### (4)   Transición de Abogado a Juez

A modo de defensa, la juez González Rodríguez igualmente atribuyó los problemas éticos asociados a la disposición de los asuntos de los promoventes, al corto tiempo disponible entre su nominación y la juramentación al puesto. Del mismo modo, adjudicó su dilema a la falta de un esquema predeterminado por esta Curia para asistir en el proceso de transición de abogado a juez.

Según mencionamos en *In re* Birriel Cardona, *supra*, a diferencia de otras jurisdicciones donde se concede a los jueces que recién ocupan su cargo un periodo de tiempo para concluir su práctica legal, en Puerto Rico la normativa

ética no admite excepciones.**9**   Por consiguiente, una vez juramenta, todo juez queda totalmente impedido de tener clientes y representarlos de alguna manera.   Canon 27 de Ética Judicial, *supra*.

Anteriormente tuvimos la oportunidad de expresarnos en torno a la posición particular en que se encuentran los abogados frente a sus clientes una vez son nombrados al puesto de juez por el ejecutivo, pero aún están pendientes de confirmación senatorial.   Véanse *In re* Birriel Cardona, *supra*; *In re* Grau Acosta, *supra*.   En estos casos señalamos que la nominación por parte del Gobernador constituye meramente un **paso inicial** en el trámite formal para ocupar un cargo judicial.   Debido a que la iniciativa del ejecutivo queda sujeta a la anuencia posterior del Senado y durante este periodo el propio nominado puede desistir de su aspiración en cualquier momento, **no** existe impedimento ético para que el abogado continúe representando a sus clientes durante esta **etapa preliminar** de los procedimientos encaminados a ocupar un puesto judicial.   Es decir, no es hasta el momento de la **juramentación** al cargo que el abogado se convierte oficialmente en juez, por lo que es **a partir de entonces** que queda inhabilitado para ejercer como abogado.

---

**9**    Son pocas las jurisdicciones que permiten llevar a cabo algún tipo de gestión legal subsiguiente a juramentar al cargo de juez.   Entre éstas se encuentran: Mississippi, Carolina del Norte y Tennessee.   Véase C. Gray, *So You're Going to be a Judge: Ethical Issues for New Judges*, 52 Ct. Rev. 80, 83, esc. 4 (2016).   Véase además, *New Judges: Winding-up a Law Practice*, 30 No. 3 JCR 1 (2018).

Por consiguiente, una vez un abogado nominado cuenta con la confirmación senatorial y aún persiste en su aspiración de ocupar un puesto en la magistratura, es su responsabilidad gestionar su renuncia a todos los asuntos pendientes en su despacho previo a su juramentación.

Aunque hemos reconocido que no contamos con un paradigma formal para sistematizar la transición que enfrenta un abogado que pasa a ocupar un cargo de juez, no por eso los nominados quedan faltos de dirección en torno a cómo prepararse para atender las responsabilidades éticas que emergen en ese momento. A esos efectos, expresamente hemos advertido a aquellos nominados próximos a juramentar de la necesidad de planificar con anticipación el proceso de finalizar sus relaciones profesionales con los clientes previo a su investidura. "La organización temprana en ese aspecto redundará en una mejor transición de la práctica del Derecho al ejercicio de la magistratura". *In re* Birriel Cardona, *supra*, pág. 311.

Cuando la renuncia a la representación legal va acompañada del cierre de la práctica de la profesión, independientemente de las razones que la motiven, surgen una serie de trámites a seguir que serán más o menos extensos y complicados dependiendo del volumen de trabajo legal que quede pendiente a ese momento.[10]

---

[10] Aparte del cierre de su práctica, la transición de un abogado al cargo de juez pone de manifiesto una serie de cambios que se han de suscitar en su vida social y profesional a partir de ese momento debido a consideraciones de naturaleza ética. Por lo que todo abogado que aspira a ocupar un puesto en la judicatura debe ser consciente de las exigencias éticas que va a enfrentar si

Para ello el abogado debe disponer de una organización interna en su oficina que le permita, como mínimo, y de manera expedita: identificar cuáles casos tienen asuntos activos o pendientes; estar al tanto del estatus de cada uno; calcular cuánto trabajo ha realizado y a cuánto ascienden los honorarios correspondientes; verificar que los expedientes estén listos para entregarse al cliente, y que cuenta con la información necesaria para contactar a sus representados.[11]

Dadas las múltiples consideraciones éticas implicadas en el proceso de renuncia a la representación legal cuando va acompañada del cierre de la práctica profesional, así

---

logra su meta profesional. Únicamente de ese modo podrá estar preparado para atenderlos oportunamente. Para una discusión sobre estos asuntos, véanse C. Gray, *supra*; C. Goldstein, *Becoming a Judge: Problems with Leaving a Law Practice*, 69 Judicature 88 (1985); C. G. Geyh, J. J. Alfini, S. Lubet and J. M. Shaman, *Judicial Conduct and Ethics*, 5ta ed., LexisNexis, 2013, sec. 7.09[3].

[11] Existen publicaciones útiles ilustrativas de diversos métodos o sistemas de planificación para efectuar el cierre ordenado de un despacho legal que cumpla a la vez con los requisitos éticos pertinentes. Las recomendaciones propuestas en estas publicaciones no se limitan a situaciones del cese de la labor de un abogado a causa de un nombramiento judicial, puesto que el cierre forzado de la práctica legal puede ocurrir en cualquier momento, ya sea a causa de una condición de salud del letrado, un accidente o inclusive, su fallecimiento. Por lo tanto, la debida organización y una planificación adecuada deben constituir el norte y la norma habitual de trabajo de cada abogado practicante. De esta forma podrá prevenir problemas éticos, a la vez de proteger efectivamente los derechos de sus representados en la eventualidad de sobrevenir una ocurrencia que le impida continuar con su práctica legal. Véanse, *Winding up a Practice: A Checklist*, updated by L. Rowntree and B. Buchanan, Law Society of British Columbia (27-June-2017), https://www.lawsociety.bc.ca/Website/media/Shared/docs/practice/resources/WindingUp.pdf; *Plan Ahead for Closing a Law Practice: Procedures for Retirement, Moving to a New Firm, or Your Death or Disability*, Lawyers Mutual Insurance Co. of North Carolina (July 2016), http://files.www.lawyersmutualnc.com/risk-managementresources/riskmanagementhandouts/closingalawpracticethroughretirement-moving-to-a-new-firm-or-death-of-a-fellowlawyer/Closing_Practice.pdf; *Planning Guide for Winding Up a Practice*, The Law Society of Manitoba (Nov. 2015),http://www.lawsociety.mb.ca/forms/membersforms/Planning_Guide_for_Winding_Up_2015.pdf/view; S. Blackford and P. Roberts, *Closing a Solo Practice: An Exit To-Do List*, 37 ABA Law Practice Magazine (May/June 2011), https://www.americanbar.org/publications/law_practice_home/law_practice_archive/lpm_magazine_archive_v37_is3_pg48.html; *Winding Up Your Practice: From Temporary Vacations to More Permanent Leaves of Absence*, https://www.capcentral.org/procedures/case_manag/docs/winding_up_your_practice.pdf.

como ante el riesgo de que el tiempo disponible para finalizar el trámite requerido para ocupar el cargo de juez sea uno breve, es aconsejable que tan pronto un abogado **inicie** las diligencias pertinentes para ser considerado a un puesto judicial, si es que no cuenta de antemano con un sistema de planificación confiable, comience a poner su oficina en orden. Ello busca facilitar la gestión eventual de renuncia conforme a todas y cada una de las exigencias éticas vinculadas a esa tarea. De lo contrario, corre el peligro de fallar en sus responsabilidades deontológicas y la posibilidad de enfrentar, como en este caso, consecuencias graves que pongan en riesgo su posición de juez y su título de abogado.

Consiguientemente, advertimos a la clase togada en general, pero muy en particular a aquellos abogados y abogadas que aspiran a ocupar un puesto judicial en su día, de la necesidad imperiosa de mantener en todo momento un control efectivo sobre los asuntos concernientes a su práctica profesional de forma tal que estén preparados para responder diligentemente cuando surja la necesidad de clausurarla acorde las responsabilidades éticas que ello supone. Además, debe quedar claro que, desde la perspectiva ética, la responsabilidad indelegable de prepararse adecuadamente para este cambio de carrera es personal de todo abogado que aspira a alcanzar un puesto en la Judicatura.

Rechazamos, por lo tanto, las excusas presentadas por la juez González Rodríguez para soslayar sus deberes éticos ante sus clientes al concluir su práctica legal, ya sea por la alegada falta de tiempo o por la supuesta ausencia de lineamientos para llevar a cabo el proceso. Dados nuestros pronunciamientos en *In re* Birriel Cardona, *supra*, e *In re* Grau Acosta, *supra*, la juez González Rodríguez debió estar prevenida que recaía sobre ella la obligación de tomar los pasos necesarios para examinar todos y cada uno de los expedientes en su despacho y así conocer de antemano si quedaban asuntos pendientes de atender, así como honorarios que devolver y de esta manera viabilizar una transición acorde a las exigencias éticas de la profesión legal.

A base de lo anterior es forzoso concluir que la licenciada González Rodríguez incumplió con el Canon 20. Es decir, falló en: comunicarle oportunamente su renuncia a los clientes e informarles el estatus de los asuntos encomendados, rendir cuenta puntualmente de los honorarios adelantados y devolver el exceso por trabajo no realizado y hacerle entrega inmediata de sus expedientes.

## D. Canon 27 de Ética Profesional – Colaboración Profesional

La Comisión concluyó que la licenciada González Rodríguez infringió también las pautas establecidas en el Canon 27 de Ética Profesional, *supra*, al delegarle a la licenciada Soto Mujica, sin la debida autorización, la representación legal de los promoventes y cederle la custodia y control de los expedientes de cada uno de ellos.

La juez González Rodríguez refutó esta determinación. Adujo que no era posible concluir que unió a la licenciada Soto Mujica como abogada de los promoventes sin el consentimiento de éstos ya que sus respectivos expedientes **no** se encontraban entre aquellos que la licenciada Soto Mujica recibió con el propósito de continuar con la representación legal.

Corresponde, por lo tanto, examinar los pormenores de la supuesta cesión de la representación legal de los promoventes a la licenciada Soto Mujica, así como el curso de la custodia y control de los expedientes de éstos para poder disponer de esta interrogante. Con ese fin analizaremos cuidadosamente el Contrato de Arrendamiento redactado por la licenciada González Rodríguez, sus respuestas a las quejas de los promoventes, junto al testimonio de la licenciada Soto Mujica en la vista ante la Comisión.

Conforme al Contrato de Arrendamiento, la transacción entre las abogadas contemplaba la venta de "la cartera de expedientes y clientes del Bufete" a cambio del pago de veinticuatro mil dólares ($24,000.00). Las partes acordaron que, de acuerdo con la licenciada González Rodríguez, el término "cartera de clientes y expedientes del bufete" significa "la totalidad de las causas con asuntos pendientes en el Bufete".

En respuesta a las quejas ante nuestra consideración, la juez González Rodríguez indicó que los asuntos de los

promoventes habían sido adquiridos por la licenciada Soto Mujica como parte de la cartera de clientes del Bufete y los expedientes pasaron a su exclusiva custodia y control desde ese momento. Por consiguiente, correspondía a la licenciada Soto Mujica continuar con el trámite de estos casos.

Trasciende de lo anterior que, para efectos de la licenciada González Rodríguez, como parte del negocio pactado con la licenciada Soto Mujica, le estaba dejando a su cargo **todos aquellos casos de su despacho legal que tuviesen asuntos pendientes a ese momento.**[12]

Ahora bien, las partes estipularon que el 7 de enero de 2013 la licenciada González Rodríguez entregó la **custodia y control** de **algunos** expedientes legales a la licenciada Soto Mujica, quien **mantuvo** los expedientes **restantes** en el Bufete. Es decir, distinguieron entre aquellos expedientes que la licenciada Soto Mujica **recibió y retuvo bajo su custodia y control** de otros que ésta meramente **mantuvo** en la oficina que le alquiló a la licenciada González Rodríguez. También surge de las estipulaciones vertidas para el récord que los expedientes de los promoventes se encontraban entre aquellos que la licenciada Soto Mujica **mantuvo** en la oficina legal.

---

[12]     Vale aclarar que, según el testimonio recibido por la Comisión, ninguno de los promoventes tenía conocimiento de la denominada venta de la cartera de clientes a la Lcda. Cristal Soto Mujica, ni prestó, previo a la firma del contrato, su anuencia a la sustitución de la representación legal, o a que se le entregaran a ésta sus expedientes legales.

Durante su testimonio la licenciada Soto Mujica ofreció su versión en torno a los clientes de la licenciada González Rodríguez a quienes acordó representar, así como la situación de los expedientes. Reiteró que a los únicos a quienes aceptó como clientes suyos fueron los aproximadamente doce a quince individuos que pudo entrevistar personalmente en diciembre de 2012. Añadió que estas personas aceptaron contratar sus servicios y ella conservó **únicamente** los expedientes de estos nuevos clientes los cuales se guardaron en unos archivos ubicados en la entrada de la oficina legal. "O sea, esos expedientes yo los retuve en términos de que yo tenía su **custodia física e inmediata** porque eran mis expedientes, estaban en mi archivo". (Énfasis nuestro). Transcripción de Vista Evidenciaria, pág. 200. En otras palabras, únicamente se le entregaron y ejerció control sobre los expedientes de aquellos clientes que entrevistó personalmente y aceptaron su representación.

Expresó que no tuvo problema con que la licenciada González Rodríguez dejara algunos expedientes en el espacio que anteriormente ésta ocupaba como oficina, pues no tenía uso para ese espacio. También quedaron otros expedientes de la licenciada González Rodríguez en el *conference room* y en un área donde estaba ubicado un escritorio pequeño y tres o cuatro archivos grandes. Sin embargo, la licenciada Soto Mujica afirmó que nunca tocó los expedientes de la licenciada González Rodríguez puesto que no eran suyos.

Declaró que la licenciada González Rodríguez le indicó que le había dado instrucciones a la señora Trenche para que llamara a los clientes y éstos pasaran a recoger esos otros expedientes.

De lo anterior podemos colegir que, aunque la juez González Rodríguez entendía que, como parte de la transacción económica formalizada entre ellas, le había cedido a la licenciada Soto Mujica los asuntos delegados por los promoventes, no se produjo la correspondiente aceptación de tal acuerdo por parte de esta última. En otras palabras, la apreciación de la licenciada Soto Mujica sobre el alcance del negocio acordado era uno muy diferente y así lo puntualizó en su testimonio. Sus declaraciones sobre este particular fueron contundentes: únicamente aceptó la representación legal de aquellas personas con las que pudo reunirse personalmente y tan sólo mantuvo la custodia y control de los expedientes de esos clientes.

Encontramos, por lo tanto, que bajo estas circunstancias no se configuraron los elementos necesarios para que se concretizara una violación al Canon 27 de Ética Profesional, *supra*. Ello, puesto que la licenciada Soto Mujica nunca asumió la representación legal de los promoventes en diciembre de 2012 como tampoco tomó la custodia y control de los expedientes de éstos al momento de ocupar el Bufete en enero de 2013. El hecho de que, en el local alquilado a la licenciada González Rodríguez, permanecieran expedientes activos de personas que habían

sido representadas por ésta no implica que los casos y la documentación correspondiente se traspasaran automáticamente al dominio y control de la licenciada Soto Mujica una vez entró en vigor el arrendamiento.

### E. Canon 35 de Ética Profesional – Sinceridad y Honradez

La verdad es una virtud inseparable de todo profesional del Derecho y debe guiarle como principio rector en cada momento en su carrera profesional. Reiteradamente hemos destacado que no actuar con sinceridad y honradez, ya sea en las relaciones con los clientes, o ante el tribunal, contraviene los preceptos del Canon 35.

Desafortunadamente en el día de hoy nos enfrentamos a una situación altamente penosa de unos clientes a quienes les hicieron pensar que sus respectivos asuntos estaban siendo atendidos por la licenciada González Rodríguez e iban en progreso. Nada más lejos de la verdad. Así pues, a preguntas relacionadas al estatus de sus casos, la licenciada González Rodríguez nunca respondió a las llamadas de la señora Gómez Correa y del señor Burgos Villafañe. En estos dos casos simplemente se les informó a los promoventes, a través de la señora Trenche, que sus asuntos estaban encaminados, aun cuando esto no era cierto.

Igualmente sucedió con la señora Rodríguez Carrión. En sus múltiples llamadas al Bufete, la secretaria le manifestó en todo momento que todo marchaba bien, pero había que esperar por una determinación judicial. Incluso, la señora Rodríguez Carrión llegó a coincidir con la

licenciada González Rodríguez en el despacho legal y la propia abogada le reiteró esta aseveración. Sin embargo, con el tiempo la señora Rodríguez Carrión se enteró que, contrario a las afirmaciones de ambas, nunca se presentó recurso alguno ante el tribunal relativo a sus asuntos.

A base de lo anterior, quedó firmemente establecido que la licenciada González Rodríguez no fue sincera y honesta en su relación profesional con los promoventes. Este comportamiento, altamente censurable, transgrede los postulados del Canon 35 que rigen la conducta de los profesionales del Derecho.

### F. Canon 38 de Ética Profesional – Preservación del Honor y Dignidad de la Profesión

La conducta desplegada por la juez González Rodríguez al desentenderse por completo de sus clientes al momento de cerrar su práctica legal e ignorar sus intentos de comunicación luego de juramentar a su cargo resultó contraria a su deber ético de exaltar el honor y la dignidad de la profesión dispuesto en el Canon 38. La prueba establece, sin lugar a duda, que no se condujo en forma digna y honorable ni se esforzó al máximo de su capacidad por realzar la buena imagen de la ilustre profesión que ejerce. Por lo tanto, sus actuaciones igualmente conformaron una infracción al Canon 38.

Apena notar cómo los promoventes en este caso fueron abandonados a su suerte luego de la juez González Rodríguez asumir su cargo judicial. Peor aún es su indiferencia frente a sus intentos de comunicarse con ella para reclamar

lo que por derecho les correspondía: sus expedientes y el dinero cobrado por trabajo no realizado.

Del testimonio vertido en la vista ante la Comisión trasciende la angustia de los promoventes ante la incertidumbre sobre el futuro de sus respectivos asuntos una vez se enteraron de que la licenciada González Rodríguez ya no continuaría representándoles. Igualmente advertimos las múltiples gestiones que realizaron para tratar de ubicar a la juez González Rodríguez en varios tribunales y los esfuerzos repetidos para procurar comunicarse con ella ya fuese por teléfono, carta, correo electrónico o mensajes de texto. Como respuesta se toparon con el silencio de la magistrada quien erróneamente asumió que las obligaciones éticas para con los promoventes cesaron en el momento en que vendió su práctica a la licenciada Soto Mujica.

El hecho de ostentar el título de abogado le impone a cada letrado la obligación de comportarse en todo momento de manera digna y honorable de manera que su conducta exalte el honor y dignidad de la profesión. Es menester recordar que las acciones y omisiones de un abogado no sólo se miden de manera individual, sino como representante de la clase togada. La conducta desplegada por la juez González Rodríguez "demuestra que dejó de exaltar el honor y la dignidad de la profesión en clara contravención a lo dispuesto en el Canon 38. No se condujo en forma digna y honorable ni se esforzó al máximo de su capacidad por

realzar la buena imagen de la ilustre profesión que ejerce." *In re* Nazario Díaz, *supra*, pág. 810.

Como justificación para no haber respondido a los intentos de comunicación de los promoventes la juez González Rodríguez aludió también a la carencia de directrices para jueces de nuevo nombramiento en torno a comunicaciones con sus ex clientes relacionadas a los casos tramitados a su favor. A esos efectos, hizo referencia al Canon 27 de Ética Judicial, 4 LPRA Ap. IV-B (2012).

El Canon 27 de Ética Judicial, *supra*, impide a los jueces, una vez ocupan su cargo, **ejercer la abogacía y proveer asesoramiento legal**, tanto a individuos como a entidades públicas o privadas indistintamente de si cobran o no por tal servicio. De manera que, conforme al mencionado Canon 27, un juez está impedido de comparecer, ya sea en persona o mediante escrito, a nombre de un cliente y abogar por sus intereses en cualquier foro judicial o administrativo. *In re* Birriel Cardona, 184 DPR 301 (2012). Esta restricción tiene como propósito evitar situaciones que puedan dar margen a que se cuestione la parcialidad de los jueces y se afecte la confianza depositada en la Judicatura en la eventualidad de que la resolución de estos asuntos culmine ante foros adjudicativos. Íd. Véase, además, Comentarios al Canon 27 de Ética Judicial, 4 LPRA Ap. IV-B (2012).

Notamos sin embargo que, en el contexto del cierre de la práctica legal, no todo contacto entre un juez de nuevo

nombramiento y un ex cliente debe necesariamente reputarse contrario al Canon 27 de Ética Judicial, *supra*. Es preciso auscultar el tipo específico de comunicación que se genera para determinar si, en efecto, existe el riesgo de que el magistrado incurra en conducta vedada por esta disposición. Conforme aparece redactado en el Canon 27 de Ética Judicial, *supra*, el factor determinante a considerar es si de alguna manera se le requiere al juez que ejerza la práctica de la profesión legal o participe en asesoramiento en materia de Derecho.[13]

Del expediente de este caso se desprende que el interés de los promoventes en comunicarse con la juez González Rodríguez se limitaba a conocer qué iba a suceder con sus asuntos y cómo podían recuperar el dinero que le habían adelantado para gestionarlos. En atención a ello no podemos concluir que los esfuerzos de comunicación en este caso representasen alguna posibilidad de conflicto ético al amparo del Canon 27 de Ética Judicial, *supra*. La naturaleza de las interrogantes de los promoventes no implicaba de manera alguna el ejercicio de la profesión o recababa de asesoría legal. Estos antiguos clientes simple y llanamente urgían información de hechos asociados a una

---

[13] En varias jurisdicciones de los Estados Unidos en donde ha surgido esta problemática se ha atendido el tema distinguiendo entre la gestión de brindar asesoramiento legal, lo cual está prohibido una vez un juez ocupa su cargo, y la de proveer información sobre asuntos que no surgen claramente del expediente o la localización de documentos. De manera que el enfoque utilizado para disponer de este dilema se centra en que la solicitud al juez **no** involucre cuestionamientos que de alguna forma estén relacionados a: procurar consejo legal, que se brinde una opinión, que se discutan estrategias de litigación o pasos a tomar para adelantar la causa del ex cliente. Véanse C. Gray, *supra*, pág. 85; C. Goldstein, *supra*, y C. G. Geyh, J. J. Alfini, S. Lubet and J. M. Shaman, op. cit.

relación profesional ya terminada, específicamente en lo concerniente al estatus de sus casos y la devolución de honorarios, un escenario sin potencial de menoscabar la confianza pública en la imparcialidad judicial.

De todos modos, en caso de albergar dudas sobre si el contacto con sus ex clientes podía infringir alguna disposición ética, la juez González Rodríguez pudo haber tomado algún tipo de medida cautelar en lugar de ignorar los intentos de comunicación de los promoventes. Por lo tanto, carece de mérito el planteamiento de la juez González Rodríguez de no atender los reclamos de los promoventes en consideración a los preceptos decretados en el Canon 27 de Ética Judicial, *supra*. Por el contrario, su mutismo no puede justificarse especialmente ante la incertidumbre en que quedaron cada uno de los promoventes por la manera en que la magistrada les abandonó a su suerte en total menosprecio a los postulados éticos a los que estaba sujeta.

### G. Canon 1 de Ética Judicial – Cumplimiento de la Ley

Por último, la Comisión concluyó que la juez González Rodríguez también infringió el Canon 1 de los Cánones de Ética Judicial. La importancia de los jueces respetar la ley no puede ser subestimada ya que la esencia de sus labores es precisamente exigirle a otros que observen nuestro ordenamiento. "[E]l deber de cumplir con la ley […] es una norma ética básica cuyo cumplimento no podemos

evadir si pretendemos que otros la acaten". *In re* Ruiz Rivera, 168 DPR 246, 259 (2006).

El Canon 1 es el único cargo imputado en contra de la juez González Rodríguez bajo las disposiciones del Código de Ética Judicial. Las alegaciones concernientes a esta normativa aparecen consignadas en el **Primer** y **Sexto** Cargo de la Querella junto a las múltiples imputaciones concernientes a los Cánones de Ética Profesional. En el Primer Cargo se le atribuyó haber incurrido en conducta lesiva a la imagen de la Rama Judicial al no haber renunciado apropiadamente a la representación de los promoventes ni informarles el estatus de los procedimientos en los asuntos para los cuales había sido contratada. Específicamente, se señaló que dicha "conducta socavó la integridad, el respeto y la confianza que deposita el pueblo en los miembros de la profesión legal y en el sistema de justicia" todo ello contrario a los Cánones de Ética Profesional 18, 19, 20, 35 y 38 y el Canon 1 de Ética Judicial. Primer Cargo de la Querella.

Como Sexto y último cargo se alegó que la juez González Rodríguez ignoró los reclamos de los promoventes para que les devolviese los honorarios pagados por trabajos no efectuados. Se caracterizó esta conducta como no digna de la profesión legal y contraria a la responsabilidad y el honor que debe representar todo abogado en contravención a los Cánones de Ética Profesional 18, 19, 20, 35 y 38 y el Canon 1 de Ética Judicial.

Por las razones que esbozamos a continuación, discrepamos de la determinación de la Comisión en torno a que la juez González Rodríguez vulneró las disposiciones del Canon 1 de Ética Judicial, según imputado en el Primero y último cargo de la Querella. No hallamos que su proceder haya infringido algún estatuto o postulado según exige el Canon 1. Tampoco se desprende que haya relegado alguna función inherente a su cargo en relación con sus obligaciones éticas para con los promoventes. En otras palabras, el expediente carece de prueba que establezca que la juez González Rodríguez de alguna manera faltó a su compromiso de defender ya sea la Constitución federal, la local, las leyes de Puerto Rico o que no haya sido fiel cumplidora al juramento concerniente a las responsabilidades propias de su puesto en la Judicatura. Resolvemos, por lo tanto, que la juez González Rodríguez no quebrantó los postulados consignados en el Canon 1 de los Cánones de Ética Judicial.

Ahora bien, el que no se haya transgredido una disposición expresa del ordenamiento ético-judicial no significa que la desidia desplegada por la juez González Rodríguez frente a los promoventes luego de su investidura pase desapercibida por esta Curia. Su comportamiento para con los que hasta un tiempo atrás habían sido sus clientes fue sencillamente deplorable. Particularmente, si tomamos en consideración que nunca les notificó de su renuncia, ni les informó del paradero de sus expedientes y tampoco

rindió cuenta de los honorarios retenidos.  La juez González Rodríguez no podía valerse de su toga para desentenderse de obligaciones fundamentales que aún le ataban a estos cuatro ex clientes.

**V. Sanción**

A base de lo anterior, concluimos que existe "prueba clara, robusta y convincente" de que la juez González Rodríguez violó los Cánones **18, 19, 20, 35 y 38** de los Cánones de Ética Profesional, mas no el Canon 27 de Ética Profesional, ni el Canon 1 de Ética Judicial.

Corresponde entonces disponer de la sanción a imponer.  En este caso la Comisión recomendó la destitución de la juez González Rodríguez del cargo de Juez Superior, además de la suspensión indefinida del ejercicio de la abogacía.  Sin embargo, según señalamos anteriormente, en consonancia con nuestra facultad disciplinaria no venimos obligados a acoger las sanciones propuestas por la Comisión.  *In re* González Porrata-Doria, *supra; In re* Quiñones Capacetti, supra; *In re* Acevedo Hernández, *supra*.

Debido a que nos enfrentamos a violaciones éticas asociadas al proceso de **transición** de un abogado a la judicatura, a modo de guía recurrimos a las dos ocasiones previas en que tuvimos la oportunidad de abordar situaciones de disciplina judicial relacionadas al comportamiento de jueces de nuevo nombramiento con respecto a sus ex clientes.

Sobre este tema, inicialmente atendimos el caso de *In re* Grau Acosta, *supra*. En esa ocasión el magistrado incurrió en múltiples faltas éticas graves por comportamiento ocurrido, tanto previo a prestar juramento en calidad de Juez Superior, como mientras ocupaba ese cargo. A base de la prueba presentada ante nuestra consideración determinamos que el Juez Grau Acosta contravino los Cánones 19, 20, 21, 27 y 35 del Código de Ética Profesional, *supra*, así como múltiples disposiciones de los Cánones de Ética Judicial de 1977, vigente al momento de los hechos, y ciertas directrices de la OAT.

Conforme detallamos a continuación, el magistrado primeramente incurrió en infracciones éticas asociadas a la renuncia de representación de sus clientes además de comparecer al tribunal a nombre de sus ex clientes y el suyo personal luego de advenir juez. Concretamente, la solicitud de renuncia a la representación legal del entonces Juez Grau Acosta aparte de tardía, pues se presentó ya ejerciendo como magistrado, adolecía de defectos constitutivos de graves faltas éticas. En específico, el Juez Grau Acosta no le informó a sus clientes los planes de descontinuar su representación y su eventual renuncia; seleccionó por su cuenta a un abogado para sustituirle en el proceso quien, a su vez, tenía un conflicto de interés en el asunto pues representaba a una parte contraria en el pleito; retuvo indebidamente los

expedientes de sus clientes y condicionó su entrega al pago de los honorarios de abogado.

Asimismo, el Juez Grau Acosta actuó impropiamente al comparecer durante horas laborables, tanto en su carácter personal, como de abogado en el mismo tribunal donde se desempeñaba como juez. En ocasiones se identificó como abogado de parte, y en una oportunidad figuró como representante de clientes a los cuales había renunciado mucho antes. Desatendió, además, su obligación de informar al Juez Administrador su interés personal en el caso para que se ordenara el traslado inmediato del mismo.

Por último, contrario a las normas éticas vigentes, declinó inhibirse en ciertos casos ante su consideración, a pesar de haberse planteado cuestionamientos legítimos sobre su imparcialidad para atenderlos. El abogado que sometió la solicitud representaba la parte contraria en un pleito en que el juez era parte en su capacidad personal. Más aún, amenazó al letrado con fallar siempre en su contra de no retirar sus mociones de inhibición.

Sumado a lo anterior, la prueba estableció sin margen a duda que las actuaciones antiéticas del Juez Grau Acosta estuvieron motivadas por consideraciones económicas y sus intereses personales, obviando en todo momento su deber de preservar el respeto y la confianza del pueblo en nuestro sistema de justicia y la obligación de exaltar el honor y la dignidad de la profesión.

El cúmulo de las transgresiones graves a las normas de comportamiento ético del Juez Grau Acosta, según resumidas anteriormente, le merecieron la destitución inmediata de su cargo de Juez Superior, así como la suspensión indefinida del ejercicio de la abogacía.

Más adelante, en *In re* Birriel Cardona, *supra*, resolvimos que la magistrada actuó contrario al Canon 27 de Ética Judicial al comparecer ante la Junta de Personal de la Rama Judicial (**Junta**) luego de haber juramentado a su cargo de juez. Esta comparecencia se efectuó a través de una moción de reconsideración mediante la cual la Juez Birriel Cardona solicitó que se dejara sin efecto la desestimación de un proceso iniciado por ella ante dicho cuerpo administrativo. La reclamación en cuestión se instó a favor de un alguacil quien impugnó su traslado. La Junta archivó la querella por alegada falta de interés ante la inacción del promovente. Junto con su solicitud de reconsideración la juez presentó su renuncia como abogada en el asunto.

Luego de tomar en cuenta los quebrantos de salud tanto del cliente como de la Juez Birriel Cardona, los cuales dificultaron la comunicación entre ellos; el hecho de que la juez no tenía intención de continuar como abogada en el proceso sino más bien su único interés era preservar los derechos de su ex cliente, y, por último, dado el historial profesional intachable de la magistrada, limitamos la sanción a una amonestación.

Conforme puntualizamos a continuación, estos dos casos son distinguibles del asunto que nos ocupa en el día de hoy para fines de la sanción a imponer. Nos explicamos.

A pesar de que las violaciones atribuidas al Juez Grau Acosta se extendieron desde la etapa en que se desempeñaba como abogado hasta luego de integrarse a la Judicatura, en su situación específica predominan la **multiplicidad de transgresiones graves a los postulados provistos en el ordenamiento ético judicial.** De este modo su conducta afectó el prestigio y la confianza de la ciudadanía en el sistema de justicia. La preocupación por cobrar sus honorarios le llevó a actuar antiéticamente en numerosas instancias sin consideración alguna a los intereses de sus clientes o en deferencia a la posición que ocupaba. Además, mostró total menosprecio del honor debido a su cargo en su actitud revanchista frente a un abogado quien, en cumplimiento con su deber, le solicitó la inhibición. En resumen, el grueso de la conducta proscrita despuntó luego de juramentar a su cargo de juez.

A diferencia de lo anterior, la conducta de la juez Birriel Cardona se limitó a **un solo incidente** del ejercicio de la profesión enmarcado en el Canon 27 del Código de Ética Judicial y **posterior a asumir su cargo de juez.** Al momento de imponerle una sanción leniente a la magistrada, tomamos en consideración una serie de factores mitigantes que denotaban que el trámite del proceso administrativo se vio afectado por los problemas de salud que aquejaron tanto

a la juez como a su representado. Igualmente destacamos que el interés de la juez en todo momento fue proteger los intereses de su representado y que, de hecho, a través de su intervención logró que se dejase sin efecto el archivo de la querella. Por último, ésta no tenía interés en continuar participando en el proceso.

Contrastamos los dos casos antes señalados con el caso que nos ocupa. Es importante destacar que estamos ante una situación novel en el ejercicio de nuestra autoridad disciplinaria ético-judicial. A pesar de que las quejas ante nuestra consideración se presentaron luego de la juez González Rodríguez juramentar a su puesto en la Judicatura, la conducta censurable ocurrió **casi en su totalidad** mientras ésta todavía se desempeñaba en la práctica legal, particularmente **durante el trámite de cerrar su Bufete** para juramentar como juez.

Así, pues, su desviación de los postulados éticos consistió en que, aparte de la falta de diligencia en el manejo de los asuntos de los promoventes, tampoco se les mantuvo informados del estatus de sus casos. Por el contrario, se les hizo creer que sus casos estaban siendo atendidos cuando no era cierto. De otra parte, una vez la juez González Rodríguez cesó sus labores como abogada no les notificó de esto a los promoventes quienes quedaron en una especie de limbo jurídico desprovistos de su derecho a una transición informada y ordenada de sus casos.

La juez González Rodríguez tampoco fue diligente en gestionar la oportuna devolución de los expedientes de los promoventes, así como el dinero cobrado por trabajo no realizado. Este retraso afectó la posibilidad de sus ex clientes en adelantar la resolución de sus asuntos. Igualmente, la desatención mostrada por la juez González Rodríguez a los intentos de comunicación de los promoventes luego de su juramentación como juez es altamente censurable y atenta contra la imagen de la profesión legal y de la Judicatura.

Cabe notar que no se trata en este caso de individuos pudientes sino personas humildes y trabajadoras quienes, con grandes sacrificios, lograron reunir lo que les representaba mucho dinero, con el fin de poner en orden asuntos que tenían un gran significado en sus vidas y la de sus familiares. Desgraciadamente la mayor parte de los mismos quedaron pendientes por la falta de recursos.

Atribuimos las faltas éticas señaladas en este proceso a la falta de control y ausencia de una planificación adecuada por parte de la juez González Rodríguez en el manejo de los casos en su oficina legal. Por ejemplo, los contratos con los promoventes fueron verbales lo que dificultaba determinar las particularidades del asunto encomendado por los clientes, cuáles gestiones todavía quedaban pendientes de realizar, así como contabilizar los honorarios pagados por servicios no concluidos.

A lo anterior se suma el proceso precipitado y descuidado del cierre del Bufete de la entonces licenciada González Rodríguez. Al parecer no se efectuó un inventario veraz de los casos con asuntos pendientes en su despacho legal lo cual dio base a los dilemas éticos que atendemos hoy. En esta línea sobresale la parquedad de los términos del Contrato de Arrendamiento en torno a los clientes que pasaban a ser representados por la licenciada Soto Mujica. El documento carece de detalles esenciales a dicha transacción. Concretamente, no se identificaron los nombres de los clientes, los asuntos delegados ni los honorarios ya pagados o pendientes de pagar.

Sin embargo, no podemos pasar por alto que la juez González Rodríguez sí se ocupó de hacer los arreglos necesarios para asegurar la continuidad en los casos de los doce a quince clientes para quienes la licenciada Soto Mujica efectivamente asumió la representación legal. Tampoco se registraron deficiencias o incidentes con el resto de los aproximadamente treinta clientes con asuntos activos del Bufete durante el periodo de transición.[14]

Igualmente, no estamos ante una conducta que denote el uso abusivo o negligente de la juez González Rodríguez de las prerrogativas de su cargo o falta a las responsabilidades inherentes a su posición en la Judicatura.

---

[14] Según estipulado por las partes, la licenciada González Rodríguez estimaba que, al momento de suscribir el Contrato de Arrendamiento, quedaban aproximadamente cincuenta (50) clientes con asuntos activos en el Bufete.

Destacamos que es la primera ocasión en que la juez González Rodríguez se ha enfrentado a cuestionamientos éticos desde su juramentación como abogada en enero de 2001. Aparte de este caso, su desempeño en su carrera como litigante y como juez ha sido impecable. Además, quedó establecido que la juez goza de una reputación personal intachable en su entorno social. Igualmente, su excelente reputación en la comunidad judicial fue validada por el testimonio estipulado de las juezas Nereida Cortés González, Lourdes Díaz Velázquez y Ladi Buono de Jesús. Sumado a lo anterior, las juezas Cortés González y Díaz Velázquez, Juezas Administradoras en las regiones en que la Juez González Rodríguez estuvo asignada, indicaron que de haber testificado hubiesen acreditado el alto grado de laboriosidad y competencia profesional demostrado por la juez González Rodríguez en el ejercicio de su cargo.

Por último, la juez González Rodríguez ha expresado su sincero arrepentimiento por los incidentes que suscitaron este trámite disciplinario y considera este proceso como una experiencia aleccionadora para su futuro profesional.

## VI. Conclusión

Luego de evaluar minuciosamente las violaciones concernidas en el marco de la trayectoria profesional de la juez González Rodríguez, tanto en su fase de abogada como en su rol de magistrada, consideramos que no estamos ante un comportamiento de tal gravedad o magnitud que amerite

despojarla de la investidura judicial. A esos efectos, reconocemos que hemos impuesto la destitución como sanción "de manera excepcional y ante conductas con un alto grado de severidad". *In re* Hon. Colón Colón, *supra*, pág. 749. Por lo cual decretamos su suspensión inmediata de empleo y sueldo por un término de cuatro (4) meses. Además, en la medida en que no se haya efectuado aún, ordenamos la devolución a los promoventes de los honorarios pagados por trabajos no realizados y que se nos acredite lo anterior en el término de treinta (30) días contados a partir de la notificación de esta Opinión *Per Curiam* y Sentencia.[15]

Se dictará Sentencia de conformidad.

---

[15] Estas cantidades se desglosan de la siguiente forma: (1) Migdalia Gómez Correa, tres mil dólares ($3,000.00); Maria E. Colón Rivera, dos mil cuatrocientos ocho dólares ($2,408.00); Miguel Ángel Burgos Villafañe, dos mil dólares ($2,000.00), y María del Pilar Rodríguez Carrión, ocho mil dólares ($8,000.00).

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

*In re*

Hon. Gema González Rodríguez,
Juez Superior del Tribunal
de Primera Instancia, Sala          AD-2015-5          Disciplina
Superior de Fajardo                                    Judicial

SENTENCIA

En San Juan, Puerto Rico a 3 de octubre de 2018.

Por los fundamentos expuestos en la Opinión *Per Curiam* que antecede, la cual se hace formar parte de esta Sentencia, concluimos que la Juez Gema González Rodríguez violó los Cánones 18, 19, 20, 35 y 38 de los Cánones de Ética Profesional, 4 LPRA Ap. IX (2012), mas no el Canon 27 de Ética Profesional ni el Canon 1 de los Cánones de Ética Judicial, 4 LPRA Ap. IV-B (2012). A base de lo anterior, decretamos su suspensión inmediata de empleo y sueldo por un término de cuatro (4) meses.

Además, en la medida en que no se haya efectuado aún, ordenamos a la Juez Gema González Rodríguez devolver a los promoventes los honorarios pagados por trabajos no realizados y que se nos acredite lo anterior en el término de treinta (30) días contado a partir de la notificación de la Opinión *Per Curiam* que antecede y de esta Sentencia.

Notifíquese personalmente por conducto de la Oficina del Alguacil de este Tribunal.

Lo acordó el Tribunal y certifica el Secretario del Tribunal Supremo. La Jueza Asociada señora Pabón Charneco hace constar que hubiese suspendido por dos (2) meses. El Juez Asociado señor Colón Pérez emitió una Opinión Disidente a la cual se une la Juez Asociada

señora Rodríguez Rodríguez. La Juez Asociada señora Rodríguez Rodríguez hace constar la siguiente expresión:

> La Juez Asociada señora Rodríguez Rodríguez se une a la Opinión Disidente emitida por el Juez Asociado señor Colón Pérez para el caso de epígrafe. Hace constar, ello no obstante, dos cosas. Primero, que las "razones", "explicaciones" o "justificaciones" de la mayoría para la sanción que impone son totalmente inadmisibles e ilusas y producen sonrojo. Segundo, que la Jueza señora González Rodríguez parece considerar que sus clientes son bienes muebles de su propiedad, los cuales puede vender a su antojo. Nada más lejos de la verdad.

La Jueza Presidenta Oronoz Rodríguez no interviene.


                              Juan Ernesto Dávila Rivera
                              Secretario del Tribunal Supremo

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

*In re:*

Hon. Gema González Rodríguez          AD-2015-5

Opinión Disidente emitida por el Juez Asociado señor COLÓN PÉREZ a la cual se une la Juez Asociada señora RODRÍGUEZ RODRÍGUEZ.

En San Juan, Puerto Rico, a 3 de octubre de 2018.

Hoy, una vez más, una mayoría de este Tribunal deja a un lado el trabajo bien hecho y bien pensado de la Comisión de Disciplina Judicial, así como sus acertadas recomendaciones, y opta por sancionar laxamente la conducta de una juez, que -- días después de haber sido nombrada a la judicatura, pero todavía en su rol de abogada -- infringió gravemente lo dispuesto en los Cánones 18 (competencia del abogado y consejo a su cliente), 19 (deber de mantener informado al cliente), 20 (renuncia a representación legal), 27 (colaboración profesional), 35 (sinceridad y honradez) y 38

(preservación del honor y dignidad de la profesión) de Ética Profesional, 4 LPRA Ap. IX, así como el Canon 1 (cumplimiento de la ley) del Código de Ética Judicial, 4 LPRA Ap. IV-B. De ese lamentable y ya reiterado proceder, nuevamente disentimos.[16]

I.

Los hechos que dieron margen al presente proceso disciplinario se recogen con particular precisión en la Opinión *Per Curiam* que hoy emite este Tribunal, por lo que -- para fines de nuestro análisis -- adoptaremos los mismos por referencia. Así pues, tan pronto examinamos detenida y cuidadosamente los hechos allí narrados, nos percatamos de que estamos ante una juez, en este caso la Hon. Gema González Rodríguez (en adelante "la juez González Rodríguez"), que -- días después de haber sido nombrada a la judicatura, pero todavía en su rol de abogada -- no realizó un ejercicio reflexivo, ni un juicio autocrítico, sobre las consecuencias éticas que tendría su conducta profesional ni sobre las repercusiones de la misma sobre cuatro (4) familias puertorriqueñas de escasos recursos económicos quienes, mientras ésta fungía como abogada, tocaron a sus puertas en busca de justicia. Una juez que, según se desprende de los hechos a los que hemos hecho referencia, desplegó un **total desinterés, indiferencia, insensibilidad** y **desidia** hacia

---

[16] Y es que, en los dos años que llevamos formando parte de este Tribunal, en la gran mayoría de las instancias en que han estado ante nuestra consideración procesos disciplinarios contra jueces o juezas el proceder de este Foro ha sido dejar a un lado las recomendaciones de la Comisión de Disciplina Judicial y/o el Procurador General.

Así por ejemplo, en *In re Candelaria Rosa,* 197 DPR 445 (2017), 2017 TSPR 29, la Comisión de Disciplina Judicial recomendó el archivo del caso y este Tribunal optó por suspender al Juez Candelaria Rosa por tres (3) meses; en *In re Hon. Colón Colón,* 197 DPR 728 (2017), la Comisión de Disciplina Judicial recomendó la destitución del Juez Colón Colón y este Tribunal optó por suspenderlo tan solo por tres meses; y, finalmente en *In re Vélez Colón*, 198 DPR 575 (2017), 2017 TSPR 133, la Oficina de la Procuradora General recomendó el archivo del caso y este Tribunal optó por censurar a la Juez Vélez Colón.

los reclamos de quienes hasta el momento previo a su nombramiento a la judicatura habían sido sus clientes.

Y es que, la evidencia testifical y documental en manos de la Comisión de Disciplina Judicial, la cual fue detallada en el *Informe* que el referido organismo le brindó a este Tribunal, dejó meridianamente establecido que la juez González Rodríguez -- días después de haber sido nombrada a la judicatura, pero todavía en su rol de abogada -- no llevó a cabo esfuerzos razonables para comunicarse con los promoventes del presente proceso disciplinario -- sus antiguos clientes -- y advertirles sobre su nombramiento a la judicatura, la consecuente renuncia a la representación legal, la devolución de sus expedientes legales, y más importante aún, la devolución de los honorarios de abogado por los servicios legales no prestados. Sobre lo antes expuesto, no existe prueba en contrario. Son hechos ciertos.

Particularmente, de la prueba documental y testifical que desfiló ante la Comisión de Disciplina Judicial claramente se desprende que, previo a su nombramiento a la judicatura, la juez González Rodríguez a través de su secretaria legal continuamente le informaba a sus clientes -- los promoventes del presente proceso disciplinario -- las gestiones legales que realizaba en su casos. Sin embargo, luego de su nombramiento a la judicatura, -- hecho que sus entonces clientes conocieron a través de terceros --, la referida juez los dejó a su suerte e inhabilitados para contratar una nueva representación legal que realizara las gestiones legales que ella no realizó, pues carecían de recursos económicos para ello.

Los testimonios de los cuatro (4) promoventes del caso que nos ocupa, los cuales le merecieron entera credibilidad a la

Comisión de Disciplina Judicial, dejaron diáfanamente establecido que éstos y éstas no recibieron comunicación alguna de parte de la juez González Rodríguez para notificarle el estado de sus casos, los trámites que restaban por llevarse a cabo, su nombramiento judicial, y/o coordinar la devolución de sus expedientes legales y de los honorarios de abogado pagados por servicios no prestados.

No empece a lo anterior, y a sabiendas de que no tuvo comunicación efectiva con todos sus clientes, surge de la prueba ante nos que la juez González Rodríguez cedió, unilateralmente y mediante contrato, a la licenciada Cristal Soto Mujica la custodia de expedientes legales con información personal de los promoventes del presente litigio, haciéndole creer a ésta que eran expedientes de asuntos terminados. La juez González Rodríguez aparentemente se concentró únicamente en los trámites relacionados a su nombramiento judicial y utilizó el mes y medio que tenía a su haber -- tiempo transcurrido entre su nombramiento y su posterior confirmación[17] -- no para llevar a cabo una ordenada transición en protección de los derechos de sus clientes, sino para exclusivamente planificar el otorgamiento de un *Contrato de Arrendamiento* en el que pactaría **"la venta de la cartera de clientes y expedientes del Bufete"** por la suma de $24,000. Dicho contrato tenía el claro propósito no sólo de cederle la tenencia física y custodia de los

---

[17] El 28 de noviembre de 2012 la licenciada González Rodríguez fue nominada como Jueza Superior, el 10 de diciembre de 2012 fue confirmada al cargo de Jueza Superior y el 11 de enero de 2013 juramentó al cargo judicial.

expedientes legales a la licenciada Soto Mujica, sino de delegarle a esta última la responsabilidad profesional sobre sus clientes. De dicho proceder surge de manera manifiesta la existencia de un palmario y claro ánimo de lucro de parte de la juez González Rodríguez.

En esa dirección, y en total abstracción de la normativa ética que regía su conducta profesional, en los comentarios escritos que presentó como parte de este procedimiento disciplinario, la juez González Rodríguez reafirmó expresamente que **"vendió"** todos sus clientes a la licenciada Soto Mujica por la suma global de $24,000, transfiriendo así -- a su errado juicio -- su responsabilidad profesional para con los promoventes del

presente proceso disciplinario.[18] En la medida en que la juez González Rodríguez no se comunicó con los promoventes del

---

[18] Particularmente, en los comentarios presentados sobre las cuatro quejas encontradas en su contra, la juez González Rodríguez esbozó la siguiente argumentación:

Como es natural luego de ser nombrada y antes de comenzar funciones, hice todas las gestiones encaminadas a cerrar mi oficina como abogada de la práctica privada. Como parte de esas gestiones, mediante Contrato de Arrendamiento de 21 de diciembre de 2012 arrendé la propiedad donde ubica mi oficina legal a la Lic. Cristal Soto Mujica. Asimismo, la Lic. Soto Mujica y yo acordamos que aquella adquiriría "…la cartera de expedientes y clientes del Bufete…" por la suma de veinticuatro mil dólares ($24,000). Esa transacción consideró la totalidad de los clientes, casos, gestiones y asuntos que, a esa fecha, estuviesen pendientes de final disposición.

presente proceso disciplinario previo a otorgar el *Contrato de Arrendamiento*, la responsabilidad hacia éstos y éstas jamás fue cedida a la licenciada Soto Mujica.

_____

Así pues, para la fecha en que las partes suscribieron el Contrato de Arrendamiento y venta de cartera de clientes, el asunto que alude la [señora Colón Rivera, señora Gómez Correa, señora Rodríguez Carrión] en su comunicación figuraba como parte de los asuntos pendientes de la cartera de clientes adquiridos por la Lic. Soto Mujica. Desde entonces, todos los expedientes pasaron a estar bajo la exclusiva custodia y control de la Lic. Soto Mujica, quien, desde ese momento se haría cargo de continuar con los trámites que requiriesen los asuntos pendientes. Debemos hacer constar que poco tiempo después de que se suscribió el "Contrato de Arrendamiento" entre la Lic. Soto Mujica y la suscribiente, [señora Colón Rivera, señora Gómez Correa, señora Rodríguez Carrión] fue notificada sobre el hecho de que la Lic. Soto Mujica habría de hacerse cargo de los casos que estaban pendientes. Véase, Comentarios escritos de la Hon. Gema González Rodríguez el 8 de diciembre de 2014 sobre la queja de la señora Rodríguez Carrión, el 9 de marzo de 2015 sobre la queja de la señora Colón Rivera y el 17 de abril de 2015 sobre la queja de la señora Gómez Correa. Véase, Comparecencia Especial, pág. 31.

Aceptar como defensa o eximente de responsabilidad disciplinaria, tal y como la juez González Rodríguez postula, que el proceso de nombramiento judicial fue uno acelerado y que se dio en medio de días festivos, representaría proveerle a esta juez una protección especial por el hecho de llevar consigo una toga y le relevaría de la responsabilidad profesional que este Tribunal les ha exigido, sin cortapisas, a otros miembros de la profesión legal. Ello no es posible. No lo es, al menos para el juez que suscribe.

En ese sentido, una vez la juez González Rodríguez se enteró de que había sido nombrada a la judicatura, debió haber previsto que podía ser confirmada para ocupar dicho cargo, por lo que, **al menos de manera preventiva**, debió haber diseñado un proceso de transición ordenado de su rol de abogada al cargo de juez, ello en cumplimiento con los estándares éticos que rigen a todos los miembros de la profesión legal. Sin embargo, ésta no lo hizo. Lo anterior se agrava si tomamos en consideración que desde que ésta advino en conocimiento de su nombramiento judicial hasta que finalmente juramentó como Juez Superior, transcurrió casi un mes y medio,[19] tiempo suficiente para comunicarse con sus clientes y dar por terminada la relación abogado-cliente en cumplimiento con los requerimientos de nuestro ordenamiento deontológico.

Por último, precisa señalar también que, de los testimonios vertidos por los promoventes del presente proceso disciplinario durante las vistas celebradas por la Comisión de Disciplina Judicial, claramente se desprende que éstos, en todo momento, depositaron su entera confianza en la representación que al

---

[19] Véase, nota al calce núm. 2.

momento de ser contratada le hizo la entonces licenciada Gema González Rodríguez. Dicha confianza, según ellos mismos testificaron, quedó gravemente lacerada, en la medida en que recibieron una total desatención y/o menosprecio de parte de la hoy juez González Rodríguez una vez ésta comenzó a ejercer sus funciones judiciales.

Sobre este particular, y según se desprende de los hechos que forman parte de la Opinión *Per Curiam* que hoy emite este Tribunal, la juez González Rodríguez determinó cruzarse de brazos e insistir en que la responsabilidad para con sus representados era exclusivamente de la licenciada Soto Mujica, a quien ésta alegadamente le había cedido su **"cartera de clientes y expedientes del Bufete"**. Al actuar de esa manera, la juez González Rodríguez hizo despliegue de una enorme **falta de sensibilidad, consideración y empatía** hacia estas personas de escasos recursos económicos, elementos indispensables en el carácter de todo miembro de la judicatura para el logro de la consecución de la justicia.

Sin lugar a dudas, con su comportamiento, la juez González Rodríguez afectó de forma significativa la percepción pública de la profesión de la abogacía, así como también de la función judicial. Toda vez que no existe un precedente donde este Tribunal haya tenido la oportunidad de evaluar una conducta similar a la incurrida por la juez González Rodríguez, nos preguntamos entonces, ¿debe un miembro de la judicatura que incurre en un comportamiento tan perjudicial, y en detrimento de quienes fueron sus clientes, formar parte de nuestro sistema judicial, y tener a su cargo la encomiable función de impartir justicia? A juicio nuestro, una persona que demuestra tal desapego a las normas básicas de la ética profesional y judicial

no merece continuar ocupando un cargo en nuestra judicatura, y amerita también su suspensión del ejercicio de la abogacía.

Es, pues, por todo lo anterior que, contrario a lo que hoy decide una mayoría de este Tribunal, somos de la opinión que en el presente caso -- tal y como lo recomendó la Comisión de Disciplina Judicial -- procedía la destitución de la Hon. Gema González Rodríguez del cargo de Juez Superior y su suspensión indefinida del ejercicio de la abogacía por su grave infracción a lo dispuesto en los Cánones 18, 19, 20, 27, 35 y 38 de Ética Profesional, *supra*, así como el Canon 1 del Código de Ética Judicial, *supra*.[20]

---

[20] En lo pertinente, los Cánones 18, 19, 20, 27, 35 y 38 de Ética Profesional, *supra*, disponen lo siguiente,

El Canon 18 de Ética Profesional postula que, "[s]erá impropio de un abogado asumir una representación profesional cuando está consciente de que no puede rendir una labor idónea competente y que no puede prepararse adecuadamente sin que ello apareje gastos o demoras irrazonables a su cliente o a la administración de la justicia". Canon 18 del Código de Ética Profesional, *supra.*

De otra parte, el Canon 19 de Ética Profesional establece que, "[e]l abogado debe mantener a su cliente siempre informado de todo asunto importante que surja en el desarrollo del caso que le ha sido encomendado". Canon 19 del Código de Ética Profesional, *supra.*

En cuanto a la renuncia de representación legal el Canon 20 indica que:

_____

Antes de renunciar la representación de su cliente el abogado debe tomar aquellas medidas razonables que eviten perjuicio a los derechos de su cliente tales como notificar de ello al cliente; aconsejarle debidamente sobre la necesidad de una nueva representación legal cuando ello sea necesario; concederle tiempo para conseguir una nueva representación legal; aconsejarle sobre la fecha límite de cualquier término de ley que pueda afectar su causa de acción o para la radicación de cualquier escrito que le pueda favorecer; y el cumplimiento de cualquier otra disposición legal del tribunal al respecto, incluyendo la notificación al tribunal de la última dirección conocida de su representado.

Al ser efectiva la renuncia del abogado debe hacerle entrega del expediente a su cliente y de todo documento relacionado con el caso y reembolsar inmediatamente cualquier cantidad adelantada que le haya sido pagada en honorarios por servicios que no se han prestado. Canon 20 del Código de Ética Profesional, *supra.*

_____

Por otro lado, en lo referente al deber de colaboración profesional y diversidad de opiniones del abogado o abogada, el Canon 27 del Código de Ética Profesional postula que, "[u]n abogado o una firma legal no debe asociar a otro abogado en la defensa de los intereses de su cliente sin obtener previamente el consentimiento de éste para ello y hasta entonces no puede divulgar al otro abogado confidencias o secretos de dicho cliente". Canon 27 del Código de Ética Profesional, *supra.*

Por su parte, el Canon 35 del Código de Ética Profesional, sobre el deber de sinceridad y honradez, establece que, "la conducta de cualquier miembro de la profesión legal ante los tribunales, para con sus representados y en las relaciones con sus compañeros debe ser sincera y honrada". Canon 35 del Código de Ética Profesional, *supra.*

En cuanto a la preservación del honor y dignidad de la abogacía el Canon 38 del Código de Ética Profesional indica que, "[e]l abogado deberá esforzarse, al máximo de su capacidad, en la exaltación del honor y dignidad de su profesión, aunque el así hacerlo conlleve sacrificios personales y debe evitar hasta la apariencia de conducta profesional impropia". Canon 38 del Código de Ética Profesional, *supra.*

Finalmente, el Canon 1 del Código de Ética Judicial postula que, "[l]as juezas y los jueces respetarán y cumplirán la ley y serán fieles al juramento de su cargo". Canon 1 del Código de Ética Judicial, *supra.*

La delicada función de impartir justicia en protección de los derechos de la ciudadanos y ciudadanas que en nuestro País habitan, solamente debe recaer en quienes hayan tenido un desempeño profesional caracterizado por un despliegue continuo de imperativos éticos como la  responsabilidad, el respeto, la prudencia, la eficiencia, la sensibilidad y la honradez, generadores de confianza pública y, a su vez, ejes centrales y esenciales para el fortalecimiento de las instituciones de justicia en el País. La carencia de principios éticos fundamentales, como los aludidos, atenta no sólo contra los cimientos del Sistema Judicial, sino que también quebranta la imagen de la judicatura ante la ciudadanía.[21]

## II.

Dicho ello, sólo nos resta mencionar que estamos ante otro proceso disciplinario en contra de una juez que ejemplifica lo que desde hace un tiempo hemos venido señalando, a saber:

> [l]a falta de uniformidad y proporcionalidad que ha permeado por años en este Alto Foro al momento de imponer sanciones disciplinarias a jueces y juezas, así como a abogadas y abogados, y que, se ha sostenido, -- de una forma muy particular --, en los últimos pronunciamientos de este Tribunal en lo que al tema de la ética judicial se refiere. *In re Hon. Colón Colón,* 197 DPR 738, 786 (2017) (Colón Pérez, op. disidente). Véase, además, *In re Carballo Nogueras,* 198 DPR 739, 783 (2017), 2017 TSPR 143 (Colón Pérez, op. disidente)*; In re Candelaria Rosa,* 197 DPR 445, 490 (2017) (Colón Pérez, op. disidente).

Así las cosas, tal como lo hemos hecho en el pasado, insistimos en que es momento de estudiar y repensar el

---

[21] Sigfrido Steidel Figueroa, *Ética de los jueces: Apuntes sobre su objeto y metodología*, VI Ethos Gubernamental, Revista del Centro para el Desarrollo para el Pensamiento Ético, 217 (2008-2009).

ordenamiento deontológico que rige la conducta de los abogados y abogadas, así como el de los jueces y juezas, en aras de cumplir **-- de manera uniforme y proporcional** -- con la facultad constitucional e inherente que tiene este Tribunal de reglamentar la profesión. Estamos seguros de que los jueces y juezas que componen la Rama Judicial de Puerto Rico, los abogados y abogadas que en ella practican, así como la comunidad en general, lo agradecerán.

III.

Por los fundamentos antes expuestos, disentimos, pues, del curso de acción seguido por una mayoría de este Tribunal y, en consecuencia, -- tal y como recomendó la Comisión de Disciplina Judicial -- hubiésemos decretado la destitución de la Hon. Gema González Rodríguez del cargo de Juez Superior y su suspensión indefinida del ejercicio de la abogacía.


Ángel Colón Pérez
Juez Asociado